Watts & S.
2ws 88
138  588

# Dickey *against* M'Cullough.

A and B entered into a written contract by which A agreed to procure a conveyance to be made to B for certain mills and real estate, in consideration of which B covenanted to advance money to pay the encumbrances upon the estate, and to carry on the works for a certain time until he should be reimbursed the money which he should advance, expenses, &c., and then he should re-convey one half; by subsequent agreements, the parties modified and changed their original contract; and after the mills and works had been carried on some time, A brought an ejectment for the estate against B to compel a re-conveyance. *Held*, that the action could be maintained, and must be considered as a bill in equity, in which the court and jury must settle the account between the parties upon the principles of their own agreements, and fix the balance due by either party, and enforce the payment of it, by means of a conditional verdict.

An estate on condition may be forfeited by a non-performance of the condition within a reasonable time, and the estate revests without the formality of a re-entry; but if the party once dispense with the condition, he cannot afterwards enter for a subsequent breach of it; his remedy in such case is an action of covenant for the breach of the contract.

If one who, by the nature of his agreement, is bound to keep an account of profits, refuses or neglects to produce it upon the trial of a cause involving a settlement of his accounts, the jury will be justified in charging him beyond what it can be shown he received.

ERROR to the District Court of *Allegheny* county.

James Dickey against Henry M'Cullough and Thomas Donnelly. This was an action of ejectment for two lots of ground and a grist-mill and saw-mill in Tarentum. There was also pending between the same parties an ejectment for seven acres of land in East-Deer township, which depended upon the same evidence, and was tried at the same time.

The plaintiff gave in evidence the following agreement between him and the defendant:

"An article of agreement, made the 11th day of April 1836, between Henry M'Cullough, of the one part, and James Dickey, of the other part, Witnesseth, that the said James Dickey, on his part, has procured Robert Lowry and Rhoda his wife, to convey in fee simple unto the said Henry M'Cullough, two lots (grist and saw-mill thereon) of ground, with the improvements thereon, situate in the village of Tarentum, and numbered 46 and 47. And has also assigned and transferred unto the said Henry M'Cullough all his the said James Dickey's interest in a certain lease of salt works and appurtenances now occupied by the said James Dickey, in Deer township, subject to the payment of the rents, &c., unto the said Henry M'Cullough, with all the fixtures, tools,

[Dickey v. M'Cullough.]

utensils thereunto belonging and necessary for carrying on the works.

" And whereas the said James Dickey is embarrassed and sundry judgments against him in the Common Pleas of Allegheny county, and is unable without assistance to continue and carry on his grist and saw-mill and salt-works. It is hereby understood and agreed that the said Henry M'Cullough shall commence and start the salt-works, grist and saw-mill and carry on the same for the term of three years from this date, taking the personal property of the said Dickey at a fair valuation, and loaning unto the said Dickey a sum sufficient to pay off the said judgments against the said Dickey.

" And it is further agreed that the said M'Cullough shall pay the said Dickey for his services in assisting him to carry on the said business in the sum of five hundred dollars per annum in four equal quarterly payments. And it is further agreed that at the end of the said term or sooner termination of the same by agreement of the parties, that the said Henry M'Cullough upon being refunded the money and interest advanced by him to pay the judgments now against said Dickey, and upon being indemnified against all other contracts and engagements of the said Dickey, shall allow and set over to the said Dickey, the one-half of all profits made by the said Henry by carrying on the said establishment, deducting therefrom the salary above specified, and shall also convey unto him the undivided half of the two lots of ground with the buildings and appurtenances thereunto belonging, and the undivided half of the lease of the salt-works, with the appurtenances, &c.; neither party to be at liberty to assign his interest in this contract without the permission of the other, and either party to have the refusal of the other's interest.

" In witness whereof, the said parties have hereunto set their hands and seals, the 11th day of April, A. D., one thousand eight hundred and thirty-six.

" Sealed and delivered in presence of

" B. Hogan."

HENRY M'CULLOUGH,     [SEAL.]
JAMES DICKEY,     [SEAL.]

The plaintiff then offered to prove that he was present and witnessed a parol exchange of property between said Lowry and said Dickey; — that he (James Dickey) was to exchange another salt-works about two miles from Freeport, with Robert Lowry, for Robert Lowry's grist and saw-mill property, being the same claimed in ejectment, and that said agreement was to made between the said Lowry and Dickey, and executed by them, and that Dickey was put into possession of said grist and saw-mill property in pursuance of said agreement, and remained in possession until he (Dickey) made his arrangement with M'Cullough under the agreement already in evidence in this case. This

II. — 12     H *

was objected to by the defendant, and the objection was sustained as to so much of it as relates to the agreement of exchange between Lowry and Dickey, and overruled as to the residue. Plaintiff excepted.

The plaintiff, after giving the evidence mentioned in the foregoing offer, gave evidence to show the improvements which he had made upon the property after he exchanged and obtained the possession from Lowry, by which it appeared that nearly the whole of both the mills were made new, and the salt-works repaired.

The plaintiff then proposed to prove the value of all the improvements put upon the property, and the total value of the property itself at the time the mills went into the possession of M'Cullough (the defendant). This was objected to by the defendant and overruled by the court upon the ground of irrelevancy; and exceptions taken by plaintiff.

The plaintiff then gave evidence to show the amount of work which had been done by the defendants at the salt-works and the mills during the time they were in their possession, for the purpose of establishing the fact that M'Cullough had been reimbursed the money which he had advanced.

Defendant offered and read in evidence the counterpart of the original article of agreement between Dickey and M'Cullough, being the same as that already in evidence on part of plaintiff; also two agreements of subsequent date, annexed to said counterpart, as follows, viz:

" Whereas, the annexed article of agreement, dated on the 11th of April 1836,—Henry M'Cullough is bound to pay me the sum of five hundred dollars per annum, for assisting him to carry on the various works enumerated in said article. And whereas, the said M'Cullough is desirous of entering into an agreement with a certain Dennis Martin, to carry on the works aforesaid, I hereby release the said M'Cullough from the payment of the said sum of five hundred dollars, or any part thereof, and agree to quit his employ and rescind so much of the contract as requires him to employ me.

" In testimony whereof, I have hereunto set my hand and seal, this 23d day of July, 1836.

" Signed,     James Dickey.

" Test. J. A. Cannon."

" In consideration of the above release, from the said M'Cullough, I do hereby surrender, and yield up, my claim to any part of the profits made by the said M'Cullough, on the steam-mills and lease of salt-works, or by the salt-well mentioned in the annexed article between the said M'Cullough and me, until such time as I shall have paid him the amount he, the said M'Cullough, paid to my creditors, in judgments against me, as is specified in the annexed article.

[Dickey v. M'Cullough.]

" In testimony whereof, I have hereunto set my hand and seal, this 23d day of July, 1836.

" Signed,　　James Dickey.

" Test, J. A. Cannon."

Defendant then offered the deposition of J. A. Cannon, taken in No. 230, June 1837, wherein said Dickey was plaintiff, and said M'Cullough defendant, it being an action of covenant on the same article of agreement, then in evidence on the part of plaintiff, and in which the breach assigned by plaintiff was the sale by M'Cullough to Donnelly.

Objected to by plaintiff, on the ground that the same point was not in controversy that is contested by the issue in the present case.

Objection overruled, and exception by plaintiff.

The defendant next offered the book of original entries, together with the abstract marked E, referred to in the said deposition of J. A. Cannon.

To this the plaintiff objected, on the ground that the abstract referred to was not evidence. Objection overruled by the court, and exception taken.

The defendant gave evidence of payments made by him for quit-rents, repairs, &c., and the records of the judgments against Dickey which he had paid: and much evidence of the business which had been done at the mills and works, tending to show that they were very unprofitable, and that no money was made. The defendants then proposed to ask a witness in the course of his examination what were the probable profits of establishments of this description at the time, to which the plaintiff objected.

Per Curiam.—You might originally on your part have claimed from the parties the production of their account by giving them due notice. You refrained from doing this, and went on with testimony to prove the probable profits. The defendants propose to rebut their testimony by the testimony now offered. I see no objection to it. The action of ejectment is such a perplexing mode of ascertaining the state of accounts between the parties, that it is difficult to say what is, and what is not advisable.

Dennis Martin sworn. I worked for M'Cullough when he carried on the mills and salt-works. The mills were in bad condition. I continued two months at the saw-mill before I went to the salt-works. The machinery was giving way every day or two. Difficult to keep it in running order. A part of it out of order when I went there. I don't recollect of hearing any conversation between Dickey and M'Cullough, but Dickey told me several times that if the works 'were well managed, they would make money. While I knew them, I had a hard thought we were not making much of any thing. Out of order. We did not run the

[Dickey v. M'Cullough.]

well at any time one whole week. Dickey was employed at that time superintending. Heard him tell Dickey that he was not fit to manage. They had several falls out while I was there. I believe M'Cullough did all he could to make the establishment profitable. He moved there, and lived in Tarentum. Dickey told me that the mills were losing money. I rented the mills and salt works from M'Cullough in July 1836. Dickey had told me before, that if I would rent from M'Cullough, he would go in with me; that he thought he could do better, if he could get Mr M'Cullough away; that he could then make enough, and would be able to pay Mr M'Cullough, and get back the works. It was through the advice of Mr Dickey that I rented from M'Cullough. M'Cullough and I had contracted for a year; Dickey wanted it three years in the place of one. The agreement between Dickey and me was that I was to lease the works, and I and he were to go in together. We went on and took the stock of logs that M'Cullough had on hand at the time, and continued in business until the next February, when I gave up the salt-works to M'Cullough. We sunk money. I retained the mills until some time in March 1837, and then I gave them up. I gave them both up under the idea that we were sinking money. We were responsible for the rents. Mr M'Cullough paid them. I never paid them. I was present when this agreement was signed by Dickey about his profits, and these arrangements grew out of the arrangements between Dickey and me relative to the lease. Dickey had told me that the salt-works were a good property, and money could be made by them. We sunk money. Jacob Overall managed the salt-works for me during the continuance of my lease. Overall moved the works, and M'Cullough paid him. We were in debt to M'Cullough at the close of our lease. (Exhibits a paper)—This is a settlement between M'Cullough and me.

The defendant then read in evidence the agreement, dated 23d of July 1836, between M'Cullough and Martin, referred to by witness, as follows:—

Article of agreement, made and entered into this 23d day of July, A. D. 1836, by and between Henry M'Cullough, of the one part, and Dennis Martin, of the other. Witnesseth:

Whereas the said Henry M'Cullough, by article of agreement, dated on the 11th day of April, A. D. 1836, purchased from a certain James Dickey, two lots of ground, situated in the village of Tarentum, county of Allegheny, and state of Pennsylvania, No. 46 and 47, with a steam saw and grist-mill thereon erected; and also all the interest of the said Dickey in a certain lease of a salt-well and appurtenances thereon, in the possession of the said Dickey, and now occupied by the said M'Cullough: And whereas the said Henry M'Cullough has, since the 11th day of April, been

[Dickey v. M'Cullough.]

employed, personally, in attending to the said mills and salt works, and is now desirous of being released from the superintendence of the same—so as to be enabled to engage in other business—the said Dennis Martin agrees and covenants with the said Henry M'Cullough to superintend and carry on the steam saw and grist-mills, and the salt-works, for three years from this date, on the following terms, viz:

All the salt made at the mills is to be delivered every day to the said Henry M'Cullough, or to his agents at the works, who is to retain as much of the proceeds of the same as will pay all the expenses of making or manufacturing such salt, and the sum of $500 for the use of the said salt-well and steam saw and grist-mill; and as much as will pay the rent of said well, coming to James Baird, which is the one-fourth barrel of all salt made at the said well; and all and every rent lien or charge there may be against each or all of said salt-works and steam-mills. And then the said Henry M'Cullough, after making the deductions aforesaid, is to pay over the balance of the proceeds of the salt to said Dennis Martin. The said Martin further undertakes and agrees to saw, at the said saw-mill, all the stock of lumber which the said Henry M'Cullough now has on hand, and any which he may hereafter furnish for the said M'Cullough, at the usual and customary prices of sawing; for which sawing the said Martin is first to receive a credit on the aforesaid sum of $500, and then the said M'Cullough is to pay him the balance in money, or accounts which he may hold against him or the said mills. And the said Martin binds himself, and agrees with the said M'Cullough, to keep all the conditions of this article, and to give up the possession of all the works mentioned in this article to the said M'Cullough at any time he may choose or wish to re-enter on the same, on the failure of the said Dennis Martin to comply with any of the terms aforesaid.

In testimony whereof, we have hereunto set our hands and seals, this 23d day of July, A. D. 1836.

　　　　　　　　　　HENRY M'CULLOUGH, [SEAL].
　　　　　　　　　　DENNIS MARTIN,　　 [SEAL].

Dennis Martin, the witness, then proceeded as follows:—

M'Cullough stated to me when I made this agreement with him, that he would have nothing to do with Dickey, and that if I made any arrangement with Dickey, I must make it on my own private account; that he would have nothing to do with him.

The defendant then offered the settlement between Martin and M'Cullough.

Objected to on the ground that it did not affect Dickey, and that the books of Dickey and Martin were in court, and offered to defendants to produce if they please.

Per Curiam.—The plaintiff cannot now interrupt the course of

[Dickey v. M'Cullough.]

defendants' testimony by interposing their own testimony and books.

The objections to the settlement overruled, and exception by plaintiff.

The defendant then gave in evidence the following agreement:

Memorandum of an agreement, made this third day of April, A. D. one thousand eight hundred and thirty-seven, between Henry M'Cullough, of the one part, and Thomas Donnelly, of the other part.

Whereas the said Henry M'Cullough has a deed of conveyance from Robert Lowry and wife, for two lots of ground, numbered forty-six and forty-seven, in the village of Tarentum, Allegheny county, on which is erected a steam grist and saw-mill, with the appurtenances: And whereas a certain James Dickey assigned unto the said Henry M'Cullough, by his assignment dated 11th of April 1836, all his, the said James Dickey's, interest in a certain lease of salt-works, and appurtenances, then occupied by the said James Dickey, subject to the payment of certain rents, &c., and upon certain conditions in the said agreement particularly set forth.

And whereas, by a subsequent arrangement between the said James and the said Henry, the said James relinquished the employment of the said Henry, and discharged him from the yearly payment to him of $500, as aforesaid in the said agreement. And the said James, also, on the 23d of July 1836, by writing under his seal, agreed with the said Henry M'Cullough, to yield up and surrender any right to the profits that he might have under the first-named agreement, until such time as the said Henry M'Cullough shall have been paid the amount the said Henry has, and was bound to pay to the creditors of the said James. And whereas the said James was, on the 9th of April 1836, justly indebted on the account aforesaid unto the said Henry M'Cullough in the sum of $2829, with interest from that date, which is still due and unpaid; upon payment of which sum, with the interest thereon, the said James will be entitled to the one-half of the real estate specified in the lease, and of the profits, &c.

Now, it is agreed that the said Henry, in consideration of the payment unto him, by the said Thomas Donnelly, of $4000, in eight equal semi-annual payments of $500, with interest from this date, doth hereby agree to sell and convey unto the said Thomas Donnelly all his, the said Henry's, interest in the premises hereunto described: To have and to hold the same to the said Thomas Donnelly, his heirs and assigns, as fully as the said Henry now holds the same, and under and subject to the covenants and conditions between the said Henry and the said James, together with the right unto the said Thomas to receive to his

[Dickey v. M'Cullough.]

own use from the said James, the said sum of money so specified to be due by the said James unto the said Henry; the deed to be made when the said payments are fully complied with.

Witness . THOMAS DONNELLY, [SEAL].
DENNIS MARTIN, HENRY M'CULLOUGH, [SEAL].
H. S. FRICK.

Received of Thomas Donnelly, promissory notes, payable according to the agreement, in full of the within purchase-money, all dated 3d May 1837.

HENRY M'CULLOUGH.

The plaintiff offered the deposition of Robert Lowry, taken in the case No. 6, November Term 1839, it being admitted that at the time the testimony was taken there were no parties in court. Offered as a mere statement of Robert Lowry's under his own hand, and as competent evidence on the ground that he is deceased, and that this his declaration can be read in evidence.

Objected to on the ground that it was not competent for any purpose; and that such an inquiry could not be made of Lowry himself, if he were in court.

The evidence overruled, and the plaintiff excepted.

In the conclusion of their charge to the jury, the court thus instructed the jury, which was the subject of exception:—

"You will therefore see, that by the construction the court have put upon this agreement, and the subsequent course of the parties, your inquiries will be limited to the actual amount of rents received by M'Cullough; that the plaintiff is entitled to call upon him to account for the one moiety of those rents; and that unless you are satisfied that he has received from the property an amount of rents sufficient to discharge the amount of advances made by him, with interest, the defendants are entitled to your verdict.

In stating the account, you will charge the plaintiff with the amount of the advances stated at $2829, with interest at the end of each year. From the aggregate of principal and interest, you will deduct one-half the yearly rent or other sum that M'Cullough has actually received, and carry on the account in that manner to the present time. I may observe, that in doing so it will be found that the plaintiff is still greatly in arrear.

This opinion of the court on the law saves you from the necessity of going into the very unprofitable and fanciful inquiry as to how much might, by possibility, have been received from the avails of the two properties; and renders the numerous calculations of the two parties predicated upon supposed losses and profits of no avail."

To which opinion of the court the plaintiff excepted.

[Dickey v. M'Cullough.]

*Hampton* and *Van Amringe*, for plaintiff in error, argued that the paper of the 11th April 1836 was a mortgage, and not a conditional sale; but the defendant was something more than a mortgagee in possession, for he was not only to keep possession until all the money he advanced was refunded, but he was to retain an absolute interest of one-half of the estate, at the end of three years. The plaintiff proposed to prove the value of the property, in order to show that the transaction was a mortgage of the premises, and not a conditional sale; for, as is said in 3 *Watts* 196, if the property was worth a great deal more than the money loaned, it would not be presumed to be a sale. The agreement was that M'Cullough was to advance his capital, and give his own personal services to the business; and if he had done so, he would have been fully paid. He had no right to sell to Donnelly; he thereby forfeited his right to the property, and the plaintiff is entitled to recover the whole. On the point that the agreement of the 11th of April 1836 was a mortgage, see, 2 *Vern.* 84; 5 *Binn.* 503; 9 *Serg. & Rawle* 147. The court, then, should have instructed the jury to render a conditional verdict, such as would have done justice between the parties. 8 *Serg. & Rawle* 491, 334; 7 *Serg. & Rawle* 155; 2 *Penn. Rep.* 505; 5 *Watts* 350; 6 *Watts* 95, 212; 8 *Serg. & Rawle* 418; 3 *Watts* 441; 2 *Johns. Chan.* 108.

*M'Candless* and *Metcalf, contra,* contended that the transaction was a conditional sale of the estate. To constitute a mortgage, there must be a covenant to pay. *Yelv.* 206; *Cro. Jas.* 281; 7 *Cranch* 218; *Platt on Cov.* 37; 2 *Bac. Abr.* 64; 2 *Yerger* 6; 9 *Yerger* 172. This agreement does not contain any covenant on the part of M'Cullough to advance money to carry on the works, or furnish capital. The plaintiff cannot recover upon an equitable title without first tendering a conveyance before suit brought. 8 *Serg. & Rawle* 332; 5 *Watts* 155.

The opinion of the Court was delivered by

ROGERS, J.—This is in form an action of ejectment, but in substance a bill in equity for an account of the profits of certain real estate, and to compel a re-conveyance of the whole or a moiety to the plaintiff. It is a remedy well understood in this state, and although the machinery is not in all cases very well adapted to attain that object, yet through the instrumentality of a jury, it has been effectually used to give equitable relief. The plaintiff was the equitable owner of a salt-works, grist and saw-mill, with the appurtenances. The property in controversy was acquired by a parol exchange between the plaintiff and Robert Lowry, the former owner, consummated by the delivery of possession. The plaintiff put the premises in repair, in consequence of which he became so much embarrassed as to become unable longer to carry on the works without pecuniary aid. And for

[Dickey v. M'Cullough.]

this reason, (as it would seem,) he was induced to enter into an arrangement with the defendant, which resulted in the agreement of the 11th April 1836, modified by the subsequent agreement of the 23d July 1836.   On the construction of these instruments the cause mainly depends.   In the article of the 11th April, Dickey agrees that he will procure Lowry, who held the legal title, to convey the premises in dispute in fee simple to M'Cullough.   He at the same time transfers to M'Cullough a lease of the salt-works, &c., with all tools, fixtures, &c., necessary to carry on the works.   In consideration whereof, after reciting that Dickey was embarrassed and unable to carry on the business without assistance, he agrees that he will commence and start the salt-works, &c., and carry on the same, for the term of three years from the date of the article; that he will take the personal property of Dickey at a fair valuation; and moreover, (and this would seem to have been Dickey's principal inducement,) that he would loan to him money to an amount sufficient to pay certain judgments, rendered against him.   It was further agreed that M'Cullough should pay to Dickey for his services $500 per annum, in four equal quarterly payments; that at the end of the three years, or if. the term terminated sooner by agreement, &c., M'Cullough, upon being refunded the money advanced, and interest, and being indemnified against the contracts and engagements of Dickey, will allow to Dickey the one-half of all the profits, &c., after deducting the salary, as before provided, together with the other incidental expenses.   And further, in the event as above specified, he engages to convey to him the undivided half of the two lots of ground, with the buildings, &c., and the undivided half of the lease of the salt-works, with the appurtenances.   Neither party was at liberty to assign without consent, and each to have the refusal of the other's interest. To enforce a compliance with these contracts, this suit is brought, and the first question is, as to the legal character of the instrument; and although I do not hold it very material in arriving at a correct result, yet we think that it is a conveyance of the legal title, with a declaration of trust, that the vendee will hold the property on the terms and conditions specified in the articles of agreement; that is to say, in trust, that if Dickey performs his part of the agreement, by causing the conveyance, &c., to be made, that he, M'Cullough will carry on the works for the term of three years, and of course, will supply the means required for that purpose; that he will take the personal property at a fair valuation; that he will loan Dickey money to pay the judgments against him; that he will employ him at a fixed salary: that he will allow him the one-half of the profits, and that he will at the end of the term, or sooner termination thereof, convey to him one half of the property.   M'Cullough, in addition to the capital to be furnished by him, agrees to give his personal attention to the business, whether with or without compensation is nowhere said,

II.— 13                    I

and neither party is at liberty to assign without consent, &c. If the case depended on the original agreement, it would be attended with comparatively little difficulty. It would be the duty of M'Cullough, in the first place, to relieve Dickey by advancing money to pay the judgments, to take his personal estate at a fair valuation, to be deducted from the amount advanced, the difference constituting the debt. In addition, M'Cullough would be bound to furnish the necessary capital, and to give his personal attention to the works, and, perhaps, upon a fair construction of the agreement, without compensation. Dickey would have a qualified management of the works, and would be entitled for his services to a fixed salary, to be paid quarterly. The profits, if any, at the end of the term, or sooner, would be divided between them. The profits would be ascertained by deducting, among other things properly included under the head of expenses, interest on the capital, payment of the ground-rents, and the stipulated salary to Dickey. And if it should so happen that the money advanced was refunded out of the profits, or in any other way, and a complete indemnity given, as is provided in the article, Dickey would have the unquestionable right to call for a reconveyance of one moiety of the premises. On the supposition that both parties had performed their contract in good faith, there would be no difficulty in a settlement on the principles indicated.

The contract, as is seen, is not without a valuable consideration, and we are at a loss to see any thing to support the allegation of usury. Nor is it of any consequence in this controversy. At the time of the original contract the parties appear to have had great confidence in each other, but which did not long continue; for, shortly after, they became mutually dissatisfied and desirous of changing their personal relations. M'Cullough was anxious to be relieved from the management of the works, so as to be able to engage in other business, and Dickey was equally desirous that he should have no further personal superintendence over them. These inferences may be fairly deduced from the testimony. Actuated by these feelings and motives, they enter into the agreements as contained in the three several instruments of the 23d of July, viz., the releases, as they have been termed, by Dickey to M'Cullough, and the agreement, or lease, to Martin. These instruments cannot well be understood on any other principles; but with this key to their construction the intention of the parties is manifest. It must be remarked that the latter are not distinct and independent agreements, although subsequent, but are modifications, or alterations of the original contract, and, of course, must be construed in connexion with each other, and as one instrument. Dickey agrees to alter or modify the original agreement, so far as to relinquish his right to be employed as a manager, at a certain salary. He consents to dispense with the

personal services of M'Cullough, and agrees to the contract with Martin. This appears as well from the agreements and written proofs, as from the evidence of Martin, who testifies that this arrangement was made with the consent, and at the instance of Dickey, who, it was understood, was to have an interest and an agency in the business. In the release of the same date, for a reason which is not very apparent from the instrument itself, Dickey agrees to surrender his claim to the profits until he shall have paid, or refunded the amount advanced by M'Cullough. This has been erroneously construed to be an absolute release of the moiety of the profits to which he was entitled under the original agreement. To this construction we cannot accede. Taken in connexion with the previous contract, it cannot fairly be said to amount to anything more than a surrender, or waiver of a right to the payment of $500 for his services as agent, and an agreement that his share of the profits may be immediately applied to the repayment of the loan, without deduction. A different construction is unreasonable, for no cause can be assigned for any other change in the first agreement. It harmonizes with the written documents, and accords with the actions and conduct of the parties, so far as their intentions have been disclosed by the evidence, written and parol. Dickey seems to have been fully impressed with the notion that the works, when well managed, were profitable — that his ill success was caused by a want of capital. He was soon convinced that M'Cullough was an unfit manager. M'Cullough (disappointed, perhaps, in his just expectations) had an equally unfavourable opinion of Dickey; and this resulted with the consent and approbation of both, in the arrangement with Martin. To maintain that this is a violation of the part of the agreement which inhibits either party from assigning their interest in the contract, is contrary to all the evidence, written and parol. But although this is very clear, yet we perceive nothing which exempts M'Cullough from rendering an account of profits, whether in the shape of rent, or otherwise. The agreement with Martin was rescinded, but whether with or without the consent of Dickey, does not appear; and afterwards, or perhaps at or about the same time, M'Cullough undertakes to sell his interest in the premises to James Donnelly. There is no evidence that Dickey either consented to the rescission of the contract with Martin, or that he agreed to the sale or assignment to Donnelly. The plaintiff contends that this is in violation of the contract, and a forfeiture of M'Cullough's title, of which he can avail himself in this suit. But this is a bill in chancery for an account; and after releasing all claim to the personal services of M'Cullough, and agreeing, as it is in proof he did, to the contract with Martin, Dickey has precluded himself from insisting on this act as a forfeiture of the defendant's title to a moiety. It is unlike the case of *Hamilton* v. *Elliott*, (5 *Serg. & Rawle* 375), which decides that an

[Dickey v. M'Cullough.]

estate on condition may be forfeited by a non-performance of the condition, in a reasonable time, and that the estate is revested in the person who is in possession, without the formality of an entry. For, where a person once dispenses with a condition, he cannot afterwards enter for a subsequent breach of the condition. If he has any remedy, it is by an action of covenant on the article for a breach of the condition. But, notwithstanding, there is nothing in the case which prevents the plaintiff from electing to require, as here, an account of the profits while under the management of Donnelly, independently of the subsequent re-transfer of the premises. Under this view of the case, let us direct our attention to the proper manner of stating the accounts, and this has been already indicated in the preceding remarks. M'Cullough would have the right to charge Dickey with the amount of money advanced. From this must be deducted, in the first instance, the value of the personal property; the balance will show the amount of the actual debt. From this deduct the profits, if any, of the works, from the time of the contract until the trial. Whether there were any profits, must be decided by the jury; and, in investigating this part of the case, the plaintiff has a right to require the production of the books which were, or ought to have been kept. They are the best evidence; and a refusal, or an inability, as is justly said in *Cassel* v. *Spayd*, (3 *Watts* 445), to furnish a just and true account, is sufficient to warrant a charge beyond what can be shown to have been received. So, if there has been any violation of the contract, by a refusal or neglect to furnish the necessary capital, and a loss has been occasioned thereby, he may be charged, by the jury, with all the profits that might have been received. The property, it appears, was burthened with ground-rents, which have been extinguished by Donnelly. In the estimation, the defendants will be entitled to charge, as part of the expenses, interest on the purchase-money, as well as interest on the capital. If the profits should exceed the amount required to pay the outlays of the defendant, the plaintiff will be entitled to a verdict for an undivided moiety of the premises, and for the surplus profits. But if it should be less, we cannot agree that the verdict should be for the defendant. This, it must be recollected, is in the nature of a bill in chancery. The jury, under the direction of the court, are bound to do what a Court of Chancery would do; that is to say, state an account, and order a reconveyance, on payment of the balance due. This may be done by a conditional verdict. The law is not so unreasonable as to require a tender before the commencement of the suit, because the sum due is uncertain, and the very object of the suit is to ascertain that which is uncertain, and which only the accountant may know. No Court of Chancery has required a previous tender; and in this respect the proceedings are identical.

As to the bills of exceptions, we think the court was wrong in

[Dickey v. M'Cullough.]

overruling the testimony of the exchange. It was part of the title, and, on that ground, was admissible in an action of ejectment; besides, it should have been received for the purpose of showing, in part, the consideration of the contract. So, evidence of the value of the premises was pertinent, having a bearing on the construction of the contract. Evidence of probable profits of other establishments of a similar description, ought not to be received, except from necessity, and in no case where better proof is in the power of the party, as by production of his own books, which, if kept as they ought to be, will remove all doubts as to the profits. The settlement between M'Cullough and Martin was improperly admitted, as it was made in the absence of Dickey. The books were the best evidence. In estimating the profits, the losses which were incurred in the course of the business, without any default or mismanagement, must be deducted. It is alleged by the plaintiff that 500 bushels of salt were on the premises at the time of the contract, the property of the plaintiff, and, as such, went into the possession of the defendant, who sold the same, and applied the proceeds to the payment of a judgment of Lowry against the defendant. If this be as stated, Dickey is entitled to a deduction to that amount, by the terms of the agreement. The plaintiff offered to prove, by the declaration and admission of Lowry, that the property belonged to Dickey; that it was a pledge for a debt due to Lowry. Surely, the admission of Lowry, who is dead, against his own interest, is evidence; that it is in the form of a deposition, detracts nothing from its force or admissibility.

Judgment reversed, and a *venire de novo* awarded.