HENRY WILDE, Respondent, *against* LUTHER L. SMITH *et al.* Appellants.

(Decided January 6th, 1879.)

The assignment of the right acquired by contract to the use of a patented machine, enjoyed upon the condition of paying a stipulated sum annually, or what is known as a royalty, is analogous to the assignment of a lease by the lessee, and the rules of law in relation thereto are applicable.

As to whether there is, between the grantor of the right to use a patented invention upon the payment of a royalty, and one to whom the right is afterwards assigned by such grantee, the privity which there is in the case of realty between the lessor and an assignee of the lessee, so that the grantor could recover the royalty from the assignee by action. *Quære.*

Where the plaintiff sold a patented machine and granted the right to use it on condition of the payment of a certain royalty, and the grant contained a proviso that the grantee should not grant to any other the right to use such machine without the previous consent, in writing, of the grantor, and the grantee subsequently assigned such right without obtaining the consent of the grantor, who thereafter accepted the royalty from the assignee: *held,* that if the proviso were a condition that the acceptance of the royalty was a waiver of it, and if it were a covenant that it did not affect the assignment, as the remedy for a breach of the covenant was an action for damages.

Where the grantor accepted the payment of the royalty from the assignee,—*Held* that this raised a presumption that the grantor knew of the assignment, and that his consent thereto had been given or waived, and that the burden of proof was upon him to show the contrary.

Where the grantor notified the assignee that the royalty on the machine owned by the grantee was due, and requested the assignee to pay it,—*Held,* sufficient to show that the grantor knew that the assignee was using the machine, and that he was the person on whom demand of payment should be made.

Where the grant of the right to use the patented machine provided that the grantees should be at liberty to terminate it at the end of the third or any subsequent year on giving the grantor three months' notice, in writing, previous to November 14th in that year of "their intention and wish to terminate the same," a notice which, after referring to the grant and the provision contained in it for its termination, stated: "We desire to give the notice required by the contract, as it is our present intention to discontinue the use of the machine after said 14th day of

November," *held*, a sufficient notice of a wish and intention to determine the agreement.

When the assignee notified the grantee of his intention to terminate the license, and inquired what price the grantor would give for the machine, and the grantor replied that he would not purchase the machine, but suggested the names of two persons as probable purchasers, and the assignee thereupon sold the machine to one of such persons, and notified the grantor of the sale, and he waited for two years and then sued the original grantee for the royalty for such two years, — *Held*, that he could not recover.

APPEAL by the defendant from a judgment of this court, entered on the decision of a judge thereof at trial term, a jury having been waived.

The action was brought to charge the defendants as trustees of the Smith, Phinney & Smith Nickel Co., a corporation organized under the Manufacturing and Mining Companies' Act of 1848, for a debt alleged to be due from that company to the plaintiff, on the ground that no annual reports had been filed by the trustees, as required by the statute.

On the trial and on appeal the question litigated was, whether there was any debt due from the corporation to the plaintiff, it being conceded that if there were the defendants would be liable.

On the trial it was admitted that on or about Dec. 24, 1872, the Smith, Phinney & Smith Nickel Co. entered into an agreement with the plaintiff, which, after reciting that the plaintiff had sold to the defendants one patented electro-magnetic machine upon the terms and conditions thereinafter mentioned, proceeded as follows:—

"Now this agreement witnesseth : That in consideration of the payment to be made by the said parties of the second part hereto, as hereinafter mentioned, and of the stipulations hereinafter contained, the said Henry Wilde, of the first part, and the Smith, Phinney & Smith Nickel Company, parties of the second part do, and each of them doth, hereby covenant and mutually agree with each other, in manner and form following, that is to say:

"That the said parties of the second part shall and may have full license and authority to use the said electro-magnetic machine, manufactured by the said party of the first

part, and constructed according to the before-mentioned letters patent, and any improvement relating thereto, so far as said invention is applicable, and can be used by the said parties of the second part, in their business of electro-plating, for the following manufacturing purposes or processes, namely: The electro deposition of metals from their solutions, from the date of this agreement, and during the residue of the term for which this patent is granted, unless previously determined, as hereinafter provided.

" And the said parties of the second part shall pay to the said party of the first part hereto, or his duly authorized attorneys, in the city of New York, immediately after the signing hereof, the sum of one hundred and ninety dollars. ($190) in gold, and on each succeeding thirteenth day of November, in each year, the annual sum of one hundred and ninety dollars ($190) in gold, in advance, for the right of using the said inventions during the year, or so much thereof as the said patent rights, or any extensions or renewals thereof, shall continue in force.

" That these presents shall not extend to give to the said parties of the second part any right, nor shall they be at liberty, without the previous consent, in writing, of the said Henry Wilde, to manufacture or sell, or grant to any other person the use of the said electro-magnetic machine during the unexpired term of the patent, or any extension or renewals thereof, nor for any of the other processes described in the specifications of the said letters patent, other than the process hereinbefore mentioned, of the electro deposition of metals from their solutions.

" And it is further agreed, that should the parties of the second part or their assigns fail to pay to the party of the first part the sum of money provided by this agreement to be paid annually, as aforesaid, and be in default therefor for thirty days after the same shall be due and payable, then that the party of the first part shall be at liberty to at once terminate this agreement, and cancel this license by a notice in writing to the parties of the second part, signed by himself or his duly authorized attorneys in the city of New York.

"*And, lastly,* that the said parties of the second part shall be at liberty to terminate this license hereby granted, at the end of the third or any subsequent year, for the term of the license herby agreed, on giving to the said Henry Wilde three months' notice, in writing, previous to the fourteenth day of November in said year, of their intention and wish to determine the same."

After the execution of said contract, and on or about July 11, 1873, the Smith, Phinney & Smith Nickel Company transferred, by bill of sale, all its property to Isaac Adams and Augustus N. Clarke, and in August of the same year Adams and Clarke transferred the same by bill of sale to the New York Nickel Plating Company. After such transfer the Smith, Phinney & Smith Nickel Company did not use the machine, but it was used by the New York Nickel Plating Company until November, 1875, when it was by bill of sale transferred by it to William E. Hague, of Pittsburgh, Pennsylvania, who has used it since that time.

While the machine was used by the New York Nickel Plating Company they paid a royalty thereon.

No royalty has been paid by any person for the years ending November 13th, 1876, and November 13th, 1877, which, if due, were, by the terms of the contract, payable in advance.

On and prior to August 4, 1875, Messrs. Hilton, Campbell & Bell were the attorneys in fact in the United States for the plaintiff, and as such wrote the following letter to the New York Nickel Plating Company, dated November 19, 1874:

NEW YORK NICKEL PLATING CO:

Gentlemen,—We would call your attention to the fact that the royalty due on the Electro-Magnetic Machine of Henry Wilde, owned by the Smith, Phinney & Smith Nickel Co. was due on the 13th instant. We would request you to send us the amount of royalty *in gold.*

Yours respectfully,<br>HILTON, CAMPBELL & BELL.

They also received the following letter, dated August 4, 1875:

Messrs. HILTON, CAMPBELL & BELL, New York City:

Gents,—In 1872, the Smith, Phinney & Smith Nickel Plating Co. bought of Henry Wilde one of his "Electro-Magnetic Machines," four (4) inch No. 5. At that time an agreement was entered into by which the Smith, Phinney & Smith Nickel Plating Co. were to pay $190 in gold each year, the agreement to terminate at the end of (3) three years by giving to Wilde three months' notice previous to 14th or November.

We desire to give the notice required by the contract, as it is our present intention to discontinue the use of the machine after said 14th day of November.

We further wish to know at what price Wilde will buy it from us.

Your early reply will oblige,
Respectfully yours,
N. Y. NICKEL PLATING CO.,
H. A. TWEED,
*Treasurer.*

On September 28, 1875, and subsequent thereto, Campbell & Bell were the attorneys in fact for the plaintiff, and wrote and received the following letters:

NEW YORK, September 28, 1875.

NEW YORK NICKEL PLATING CO.:

Gentlemen,—We wrote to Henry Wilde, informing him that you desired to discontinue the use of the Electro-Magnetic Machine. He replies to us by letter of the 17th instant that it is not his custom to repurchase machines, and the most he can do is to afford facilities for transferring them to other users.

He adds that W. E. Hague, of Pittsburgh Nickel Plating Works, and Messrs. Appleton, Publishers, of Brooklyn, have

made application for a four-inch machine, and you might be able to sell your machine to one of these applicants.

Yours respectfully,

CAMPBELL & BELL.

NEW YORK, November 23, 1875.

N. Y. NICKEL PLATING CO.,

H. A. TWEED,

*Treasurer :*

Dear Sir,—We understand that you have obtained a purchaser for your Wilde Electro-Magnetic Machine.

Will you be kind enough to inform us to whom you have sold said machine.

Yours respectfully,

CAMPBELL & BELL,

*Attys. for Henry Wilde.*

NEW YORK, November 27, 1875.

Messrs. CAMPBELL & BELL :

Gents,—In reply to yours of 23d inst., would say we sold our Electro-Magnetic Machine to W. E. Hague, one of the parties named in your letter of September 28 as having made application to Mr. Wilde for a machine.

Yours, &c.,

H. A. TWEED,

*Treasurer.*

The judge, in his decision, found as a matter of fact that the plaintiffs never gave any consent to the transfer of the machine to W. E. Hague, and knew nothing thereof, except as stated in the foregoing letters.

Upon these facts the judge rendered a decision directing judgment for the plaintiff for two years' royalty, amounting to $380, with interest and costs.

*Dickerson & Beaman*, for appellants.

*Douglas Campbell*, for respondent.

CHARLES P. DALY, Chief Justice.—The assignments by the defendants to Adams and Clark, and by them to The Nickel Plating Company, did not release the defendants from their liability to pay the royalty under their covenant. A lessee is not released from his covenant to pay rent by assigning the lease, and the reason why he is not is equally applicable to the assignment in the present case. The lessee cannot discharge himself from his liability by his own act. (*Walker's Case*, 8 Co. 23.) A lessor has the right to rely upon the one with whom he contracted, and who covenanted to pay the rent, and is not bound to look for the payment of it to any one to whom the lessee may think proper to assign the lease. If the assignee accept the assignment of the lease he becomes bound to the landlord for the payment of the rent as long as he remains assignee, in or having the right to the possession, as there is then, between him and the landlord, privity of estate and privity of contract in respect to the estate. (2 Platt on Leases; *Pitcher* v. *Tovey*, 4 Mod. 73, 74.) But this does not discharge the lessee, who continues liable upon his covenant, although the landlord may have consented to the assignment, and accepted the assignee as his tenant. (*Fisher* v. *Ameers*, Bro. & Golds. 20; *Arthur* v. *Vanderplank*, 7 Mod. 198.)

In determining the other questions that arise under the assignment, it will be necessary also to refer to the law respecting the assignment of a lease by a lessee; that kind of transfer being the nearest in point of analogy to an assignment of the right acquired by contract to the use of a patented machine, enjoyed upon the condition of paying a stipulated sum annually, or what is known as a royalty. The effect of the assignment of a lease by a lessee is, that the assignee takes all the interest which the lessee had by the lease, subject to the performance of such covenants in it as are connected with the demise. (*Thompson* v. *Rose*, 8 Cow. 266; *Norman* v. *Wells*, 17 Wend. 146, 147; *Verplanck* v. *Wright*, 23 id. 509, 510; *Allen* v. *Culver*, 3 Denio, 294–299; *Williams* v. *Bosanquet*, 1 Brod. & B. 238.) Under the Revised Statutes, the assignee has the benefit of any agree-

ment contained in the lease, whether express or implied, and the same remedy for its enforcement that the lessee would have had (1 R. S. 747, § 24) ; and by the common law, as the assignee is bound by all covenants connected with the land, he is also entitled to the advantages of them, if they are broken, and may bring an action therefor. (*Lewes* v. *Redge*, Cro. Eliz. 863 ; *Kane* v. *Sanger*, 14 Johns. 93 ; *Martin* v. *Baker*, 5 Blackf. 232.) If he accepts the assignment, he becomes liable to the lessor for the performance of the covenants, and the lessor may recover the rent from him in an action of debt, founded upon the privity of estate, or in an action of covenant upon the privity of contract respecting the estate (2 Platt on Leases ; *Tongue* v. *Pitcher*, 3 Lev. 295 ; *Thursby* v. *Plant*, 1 Wm. Saund. 241; *Allen* v. *Bryan*, 5 B. & C. 512) ; or sue the assignee and the lessee jointly for it. (*Bailiff of Ipswich* v. *Martin*, Cro. Jac. 411 ; Com. Dig. Det. E.) The reason given why the lessor, after an assignment, should, for the recovery of the rent, have a remedy by distress, an action of debt, or covenant against the assignee, and also an action against the lessee upon his covenant, is that the assignee may assign the lease to a beggar, or to one who may suffer the house to remain empty, so that there may be nothing in it upon which to distrain, and therefore, as was said, the lessee " should not be allowed to prevent, by his own act, the remedy which the lessor had against him by his own contract." (*Pitcher* v. *Tovey*, 4 Mod. 75; Tomlin's Law Dict.—Privies.) He consequently continues liable upon his contract until the end of the term. (*Walton* v. *Crowly*, 14 Wend. 63.) If the duration of the lease is optional, as if it is given for four years or twenty, if the lessee so elects, or where both concur ; or if it is for so many years, with the right, on the part of the lessee or lessor, or of one of them only, to determine it at an earlier period, upon giving notice to the other (*Dann* v. *Spurrier*, 3 Bos. & P. 399 ; *Goodright* v. *Richardson*, 3 T. R. 462; *Goodright* v. *Nichols*, 4 M. & Sel. 30), this right necessarily passes to the assignee, in whom is vested all the interest in the demise which the lessee had under the lease. Thus, a cove-

nant of renewal may be enforced by the assignee in equity (*Piggot* v. *Mason*, 1 Paige, 412); or he may maintain an action in his own name against the lessor for the breach of such a covenant. (Moor on Conditions, p. 159; *Hyde* v. *The Dean, &c., of Windsor*, Cro. Eliz. 553; *Lametti* v. *Anderson*, 6 Cow. 307, 308; *Bennett* v. *Vansyckel*, 4 Duer, 462. As respects a condition that the lessee shall not assign without the express consent of the lessor, it is, in the first place, a kind of restraint that the law does not favor (*Church* v. *Brown*, 15 Ves. 265); and as the court said in *Crusoe* v. *Brigby* (2 Wm. Bl. 767), in respect to such restraints "very easy modes have always been countenanced for putting an end to them." Thus, the acceptance of rent by the lessor after knowledge of the breach of a condition not to assign, is regarded as tantamount to a license and discharges the condition (*Lloyd* v. *Crispe*, 5 Taunt. 255, 256; Taylor on Landlord and Tenant, §§ 410, 411, 451; Smith on Land. and T. 119), and where the condition is once discharged, no consent or license is thereafter required in making any further assignment. (*Dakin* v. *Williams*, 17 Wend. 457; *Siefke* v. *Koch*, 31 How. 383; *Brummel* v. *Macpherson*, 14 Ves. 173; Taylor's Land. and T. § 410.) Where the consent is to be given in writing, a parol consent will not discharge the condition; but if the landlord, knowing of the assignment, accept rent after the forfeiture has been incurred, the forfeiture is waived and the condition gone. (*Ray* v. *Harrison*, 2 T. R. 430, 431.) There is a distinction between a condition and a covenant not to assign. The breach of a condition works a forfeiture; whilst for the breach of the covenant the remedy is an action for damages. (*Paul* v. *Nourse*, 8 B. & Cres. 480; *Dickey* v. *McCulloch*, 2 W. & S. 100.)

Applying this familiar law to the present case, the first conclusion is, that the plaintiff waived the condition, if it were one, that the defendants should not sell or grant the use of the machine to any other person, without his written consent, by receiving the amount of the royalty from The Nickel Plating Co., to whom the defendant's interest had

passed by assignment. It is well settled that the party in whose favor a provision is made by the contract may waive it if he pleases (*Church* v. *Ayres*, 5 Cow. 273); and when the plaintiff knew that the assignees, The Nickel Plating Co., were using the machine, and through his agents received the amount of the royalty from them, it was a recognition of their right to do so; warranting the conclusion that he had either given the consent in writing or had, as he might do, waived the condition. Like receiving rent from the assignee of a lease, containing such a restraint, it was equivalent to a license, and the condition was discharged. If, however, the provision in the assignment was not a condition, but a covenant, or was, as it might be regarded, both a covenant and a condition (Platt on Covenants, 72, 73), the covenant would not affect the assignment, the plaintiff's remedy for a breach of the covenant being an action for damages. (*Paul* v. *Nourse*, 8 B. & C. 100; *Doe* v. *Herinker*, id. 308; *Dakin* v. *Williams*, 17 Wend. 458, 459.)

On the 19th of November, 1874, the plaintiff's attorneys sent a letter to The Nickel Plating Co., advising them that the royalty was due on The Electro-Magnetic Machine Co., *owned by the defendants*, and requesting that company to send to them, the attorneys, the amount of the royalty in gold. The respondent insists that the letter shows that the plaintiff still regarded the machine as belonging to the defendants; but I think the fact that the attorneys sent to The Nickel Plating Co. for the royalty shows clearly that they knew that that company was then using the machine, and not the defendants, and that it was from them that the demand should be made for the payment of the royalty. The judge has found that the transfer to The Nickel Plating Co. was made without the knowledge or consent of the plaintiff; but as the fact that this letter was sent by the attorneys has also been found, we may review the judge's finding and give to the letter its full effect. Giving to it its full effect, it warrants the conclusion that the consent in writing, which was requisite to entitle the defendants to grant the use of the machine to others, had either been given

or waived by the plaintiff, and that thereafter, instead of the attorneys demanding the payment of the royalty from the defendants, they demanded it from The Nickel Plating Co.

If after an assignment the lessor accept rent from the lessee, it is no waiver, unless it is shown that he knew of the assignment; for there can be no presumption that he had such knowledge simply because he received the rent from the lessee (*Roe* v. *Harrison*, 2 Term R. 425); but if he accept rent from the *assignee*, it will be assumed that he knew of the assignment until the contrary appears, and the burden is upon him to show that he did not. (3 Salk. Acceptance, 3; *Whitecot* v. *Fox*, Cro. Jac. 398.) Applying this rule, it was for the plaintiff, after accepting the royalty from The Nickel Plating Co., to show that when he did so he did not know of the assignment to them.

If The Nickel Plating Co. had not paid the royalty, the plaintiff could have received it from the defendants as long as the agreement remained in force. Whether he could recover it from the assignee by an action is a question that would involve a somewhat long and critical examination of cases (*Bally* v. *Wells*, Wilmot's Notes, 344, 345; *Vernon* v. *Smith*, 5 B. & A. 1; Platt on Covenants, 473; 2 Platt on Leases, 413, and cases cited) that create a doubt if there is, between the grantor of the right to use a patented invention upon the payment of a royalty and one to whom the right is afterwards assigned, the privity which there is in the case of realty between the lessor and an assignee of the lessee, which I shall not go into, as it does not become material to pass upon that question. The question to be determined is, whether the agreement was put an end to in the mode provided for in it; for if it was, the defendant's liability ceased and this action cannot be maintained.

The assignees, The Nickel Plating Co., as I have said, had the same right which the defendants had to terminate the agreement by giving the notice provided for in it; and The Nickel Plating Company, on the 4th of August, 1875, whilst they were yet assignees, gave such a notice. The notice was given to the plaintiff's attorneys. It sets forth that in 1872

the defendants had bought the machine of the plaintiff. It refers to the agreement between him and the defendants: that the defendants were to pay each year $190 in gold; and that the agreement was to terminate at the end of three years, by giving the plaintiff three months' notice previous to the 14th of November. It then stated that they, The Nickel Plating Co., desired to give *the notice required by the contract*, as it was their intention to discontinue the use of the machine after the 14th of November, the provision in the agreement being that the defendants should give notice of "their intention and wish to terminate the same" (the agreement or license). The fair meaning and purport of the language used in this letter was, in my opinion, to give notice of a wish and intention to determine the agreement; and that it was so understood, both by the plaintiff and by his attorneys, appears by the subsequent letter of the attorneys to The Nickel Plating Co., advising them that they (the attorneys) had written to the plaintiff, informing him that they (The Nickel Plating Co.) desired to discontinue the use of the machine; in which letter the plaintiff's attorneys say, in reply to an enquiry made by that company, who desired to know at what price the plaintiff would buy the machine from them; that the plaintiff had replied that it was not his custom to repurchase machines; that the most he could do was to afford facilities for their transferring it to other users, and that he had named two persons (Hague, of Pittsburgh, and the Appletons, of Brooklyn), to one of whom the company might be able to sell it. The whole purport of this letter shows that the plaintiff fully understood that what had been sent to his attorneys was a notice of the company's desire and intent to determine the agreement, assuming, as assignees, that they had the right to do so; and that he made no objection that the notice had been given to his attorneys, instead of being given to himself personally.

If the attorneys had no authority under this provision to receive notice of the intention to determine the agreement on the 14th of November, 1875, it was due, in fairness to the writers of the letter, for either the attorneys or the plaintiff

to notify them that the notice given would not be received, under the agreement, instead of misleading them by pointing out that they might be able to sell the machine to W. E. Hague, of Pittsburgh, to whom, acting upon this suggestion, they succeeded in selling it ; and afterwards, by the attorneys writing to them to the effect that they understood that they had obtained a purchaser for the machine, and asking to be informed to whom they had sold it; to which the company replied that they had sold it to Hague, the person named in the attorneys' letter as having applied to the plaintiff for a machine. The Nickel Plating Co.'s right to sell the machine to Hague was thus recognized by the plaintiff, and the purchaser's name was given to them by him as one to whom they might be able to sell it. The sale to Hague was made in November, 1875, and the royalty for the year ending November 13th, 1876, and for November 13th, 1877, not having been paid by him, the plaintiff brings this action against the defendants, upon the agreement, more than a year after this notice was given by their assignees, when the defendants are apprised that the plaintiff's objection to the notice of the assignees is that it was not given to him, but to his attorneys ; and does not express in the terms of the agreement that it was the intention and wish of the defendants to terminate the agreement. This provision was inserted for the plaintiff's benefit, and, as I have before said in respect to a provision of this nature for a party's benefit, he may waive if he pleases, and the letter sent to The Nickel Plating Co. shows that he did so. The notice, in my opinion, was sufficient, and put an end to the agreement, and as the agreement was at an end, the defendant's liability upon his covenant ceased.

The defendant claims that the royalty was payable for the right to use the invention, and was wholly independent of the use of the machine. A transfer of the assignment of the machine would have been of little or no value without the right to use it, and an assignment of all the defendants' property would not only transfer to their assignees the machine but the authority and right to use it under the con-

tract by which the plaintiffs sold it to the defendants, upon the terms and conditions expressed in the instrument. These terms were, that the defendant should pay upon the signing of the agreement $190 in gold, and $190 in gold every year thereafter for the right of using the invention, with the right of the defendants to terminate the license granted at the end of the third or any subsequent year, upon giving notice, &c. Of course, the defendants were bound to pay this royalty annually, whether they used the machine or not, at least for three years, and until they had the right to terminate the agreement. But it is the machine and the right to use it that is granted by the agreement in consideration of the sum paid at the execution of the instrument, and upon the condition that the like sum would be paid annually thereafter. It is analogous to the lease of premises, the possession and use of which is given to be enjoyed by the payment of a certain sum annually; and the right to the machine and the right to use it are necessarily inseparable.

It is, as respects the defendants, wholly immaterial that The Nickel Plating Co. sold the machine to Hague. Whether they sold it before the 14th of November, 1875, the day when the notice terminating the agreement took effect, or afterwards, can in no way affect the defendants. If Hague acquired nothing by it, because The Nickel Plating Co. had terminated the agreement or license, that was a matter between Hague and them. If, having put an end to the license, they could transfer to him no right to use it, his remedy was against them, whatever that remedy may have been, and if he undertook to use it without the authority or consent of the plaintiffs he was in turn answerable to the plaintiffs. It is very apparent, however, what was the true state of facts. The plaintiffs evidently recognized that the contract made with the defendants would terminate on the 14th of November, 1875, by the notice given by the assignees. As he was not willing to repurchase the machine, and knew, that, at the termination of the contract on the 14th of November, 1875, no one could use it without his license or authority, he was willing that The Nickel Plating Co. should

sell it to Hague, he having the right to require from Hague
the payment of the royalty.   He was willing that Hague
might use it, and continue to use it as long as he paid the
royalty, anticipating that Hague, as a matter of course,
would do so.   Thus, on the 23d of November, 1875, nine
days after the time named in the notice of the assignees for
the termination of the agreement, the plaintiff's attorneys
wrote to The Nickel Plating Company asking them to whom
they had sold the machine, and the company's reply that it
has been sold to Hague, one of the persons named in their
letter as having applied to the plaintiff for a machine.   This
shows that what was expected was that Hague would pay
the royalty to the plaintiff, and that the plaintiff was satis-
fied, if Hague paid the royalty, that he might thus continue
to use it.   Hague did not pay it, though, as the judge finds.
he used the machine after November, 1875.   The royalty
after November, 1875, was payable in advance, and no roy-
alty has been paid by Hague for the year ending on the 13th
of November, 1876, and the 13th of November, 1877, upon
which the plaintiff takes the ground that the original con-
tract with the defendants has never been put an end to, and
brings this action to recover the royalty for these years from
the defendants, assuming that they are still liable on their
covenant.   I think the action cannot be maintained, and
that the judgment should be reversed.

VAN HOESEN, J.—The Chief Justice has said that this
contract so strongly resembles a lease of land that we must
find the rules governing its construction in the law of land-
lord and tenant.   We have before us a thing demised, a rent
payable annually, a covenant against assignment, a covenant
that the property shall be used for a certain purpose only,
and a covenant providing for the abridgment of the term.
A covenant for renewal is a covenant running with the land,
because it directly touches or concerns the thing demised ;
and a covenant for the termination of the lease must, for the
same reason, run with the land.   An assignee of the lease
may enforce a covenant for renewal (Taylor's Landlord and

Tenant, § 445 ; 1 Washburn on Real Property, p. 332) ; and by parity of reasoning, he may also avail himself of a covenant for the determination of the lease. If this be so, it was within the power of The Nickel Plating Company (the assignee) to give to the plaintiff the notice provided for by the contract, as the means of putting an end to the royalty on the one hand, and to the use of the machine and the invention on the other.

That notice was given at the proper time. It reached the plaintiff, who recognized it, and suggested the names of persons, some of whom might buy the machine when The Nickel Plating Company should cease to use it. Under these circumstances the contract was terminated, and the plaintiff has no right of action against the defendants upon it. If Hague is using the invention without paying for the privilege he is an infringer and a trespasser, and if the plaintiff be properly protected by letters patent his remedy lies in a federal court. If the covenant for terminating the contract ran with the right to use the machine, there is no force in the plaintiff's argument that the defendants, even after they had sold the machine and the right to use the invention, were the only parties who could decide whether their assignees should use the machine beyond the period of three years named in the contract.

I think the judgment should be reversed and a new trial ordered, with costs to abide the event.

Judgment reversed and new trial ordered, costs to abide the event.