## Walker, Garnishee, *versus* Coover, Administrator, &c., of Bittner.

1. Snyder held two bonds against Walker; being indebted, he assigned them verbally to Patton, a married woman, as collateral security, upon her assuming to pay his debts. The contract was binding on Snyder, notwithstanding her coverture.

2. The bonds were levied on in Walker's hands under an attachment execution against Snyder. The court charged that the assignment was void except for what Patton had actually paid before the service of the attachment. *Held*, to be error.

3. The rights of property acquired by a married woman on the faith of a promise which she voluntarily performs cannot be struck down by the creditor of one who has ceded his property to her upon the contract.

4. The right of the creditor of the assignor cannot rise higher than that of the assignor.

5. An attaching creditor stands in the shoes of his debtor as to the property attached.

May 11th 1870. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *Somerset county*: No. 33, of May Term 1870.

On the 6th of February 1861, Matthias Bittner issued an attachment execution against Josiah Snyder on a judgment recovered against him on the 5th of February, for $588.75. Samuel Walker was one of the garnishees; he answered interrogatories and also pleaded *nulla bona*. On the 20th of September 1869, Snyder's death was suggested, and John B. Coover, his administrator, was substituted.

On the same day the case came on for trial before Rowe, J.

The father of Snyder devised to him certain real estate, subject to legacies to his three sisters, of whom Sophia Patton, the wife of John W. Patton, was one. He sold the land to Walker, the garnishee, and as part of the purchase-money took from him a judgment-bond for $6000, payable in annual instalments of $500 each; the first on the 1st of April 1859, and the last on the 1st of April 1870. In January 1861 Snyder, who was a storekeeper, sold his store to Mrs. Patton, and on settlement with her she fell in his debt $800, for which she gave him notes; these he assigned shortly afterwards in the same month to Gabriel Walker, to whom he owed $926.44, which Walker had paid as surety for him on his bond as assignee of one Heiple. On the 1st of February 1861, he assigned to his sisters three of the $500 Walker bonds. Walker, in his answer to the interrogatories, admitted that two of the Walker bonds, due respectively April 1st 1869 and April 1st 1870, were unpaid and owing by him, and that they had not been transferred at the time of the attachment. The garnishee gave evidence that at or about the time of the assignment of Mrs. Patton's $800 notes to Gabriel Walker, Mrs. Patton and Snyder

[Walker v. Coover.]

agreed that he would verbally assign to her the two bonds in controversy as collateral security, she to pay Gabriel Walker the balance of $126.44 due to him, and also other indebtedness amounting to $425; that Mrs. Patton assumed and subsequently paid this indebtedness; some of G. Walker's remained unpaid. The bonds were assigned on the 3d of October 1868. He gave evidence also that the husband of Mrs. Patton was present when she gave the $800 notes, and the arrangement was made between her and Snyder that she should pay Snyder's debts and he assign the bonds; that the notes given by her for the store were paid to Gabriel Walker by her husband as her agent.

Judge Rowe charged:—

* * * " Mrs. Patton was at the time a married woman. John W. Patton, her husband, was present when Gabriel Walker and Josiah Snyder met in January 1861. He seems to have been acting for her. This arrangement then, in January 1861, was an agreement, a contract between Josiah Snyder and a married woman, that she should assume certain debts of his, and be secured against loss by means of a portion of a judgment he had, which was not then assigned to her. There was no benefit to accrue to her so far as appears. She was not legally competent to make such a contract. What then was Josiah Snyder's position with relation to these two last instalments of the Walker judgment on the 6th of February 1861 ? for Bittner, the attaching creditor, doubtless stood in the shoes of Snyder. The latter held these two instalments unaffected by the contract made with Mrs. Patton, except so far as she had executed the contract by payment of the assumed claims.

" So far as she had executed the agreement before the 6th of February 1861—the date of the service of the attachment on Walker, the garnishee—she will be protected. Although she could not be compelled to execute the contract she had made, being void as to her for want of ability to contract, nevertheless, so far as she had executed it, Josiah Snyder would be bound. It was money paid by her at his request, upon his agreement that she should have an equal amount out of these two instalments. To the extent that she had paid money in pursuance of the agreement, the two instalments belonged to her. The remainder was Snyder's and was liable to attachment. How far had she executed the agreement on the 6th of February 1861 ?" * * *

The verdict was for the plaintiff for $893.04; execution on all over $513.75 to stay till April 1st 1870.

The garnishee took a writ of error, and assigned the charge for error.

C. Meyers and W. H. Koovitz, for plaintiff in error.—A married woman may enter into contracts: Manderbach v. Mock, 5

Casey 46; Weiman *v.* Anderson, 6 Wright 311; Rush *v.* Vought, 5 P. F. Smith 437; Williams *v.* Coward, 1 Grant 22; Williams's Appeal, 11 Wright 307.    The contract, if not binding on the wife, was on the husband, having been made with his consent: Heugh *v.* Jones, 8 Casey 433; Hallowell *v.* Horter, 11 Id. 379; Robinson & Co. *v.* Wallace, 3 Wright 132.    Bittner acquired only Snyder's position in the contract: Pellman *v.* Hart, 1 Barr 263; Tritts *v.* Colwell, 7 Casey 232; Riddle *v.* Etting, 8 Id. 413; Patten *v.* Wilson, 10 Id. 299; Strong *v.* Bass, 11 Id. 333; Myers *v.* Baltzell, 1 Wright 491; Fessler *v.* Ellis, 4 Id. 248; Reed *v.* Penrose, 2 Grant 488.

*J. O. Kimmel* and *J. Hugus*, for defendant in error.

The opinion of the court was delivered, July 7th 1870, by

Agnew, J.—All of the assignments of error in this case rest upon a single question, upon the right of Mrs. Patton to take and hold the last instalments of $500 each of the judgments of Josiah Snyder against Samuel Walker.    The court below held that the verbal transfer of these two instalments by Snyder to Mrs. Patton, as collateral security for certain debts, which she undertook to pay for Snyder, was void as to all sums paid by her after service of the attachment on her and Samuel Walker.    This is on the ground that she is a married woman, and her contract not binding on her. In this we think the learned judge erred.    While the contracts of a married woman cannot be enforced against her, if she dissents, it does not follow, that rights of property acquired by her on the faith of her promise which she performs voluntarily, can be struck down by the creditor of the person who has ceded his property to her upon an honest contract.    Clearly her title is not void if she pays or fulfils the consideration she has promised.    The right of the creditor of the assignor cannot rise higher than that of the assignor himself.    The attaching creditor stands in the shoes of his debtor as to the property attached.    In this case the agreement of Mrs. Patton to pay the debts of Josiah Snyder, for which he made the assignment of the last two instalments of his judgment against Walker, was made by and through her husband, so that the contract and assignment both had his assent.    Part of the debts of Snyder she paid before the service of the attachment, and the remainder she has since paid.    The assignment of the two instalments was a complete and executed transaction before the attachment issued.    The fact that it was a verbal transfer cannot change the effect of the act.    It was not an agreement for a future transfer, but a present security given by Snyder to secure her in making the payments for him.    The payments to be made by her were the consideration only, and not a condition to the vesting of title in her to the instalments.    Therefore, when the plaintiff

issued his attachment, the title to the instalment had already vested in her, and was beyond the reach of the writ unless she were incapable of accepting a transfer, or she had avoided the assignment to her by refusing to perform the agreement which constituted its consideration. The attaching creditor could not avoid it by his option alone. That a married woman can take property by purchase is very clear: Bacon's Abridg. tit. *Baron & Feme,* Div. 1; Kutz's Appeal, 4 Wright 90; Williams' Appeal, 11 Id. 309–10; Wieman *v.* Anderson, 6 Id. 311; Bortz *v.* Bortz and Wife, 12 Id. 382; Manderbach *v.* Mock, 5 Casey 43. There was no question here as to the rights of the husband of Mrs. Patton, as he had assented to the assignment to his wife, and the plaintiff was not his creditor.

Judgment reversed, and a *venire facias de novo* awarded.