Syllabus.

JAMES RAY v. WEST. PENNA. N. GAS CO.
JAMES. A. SMILEY v. WEST. PENNA. N. GAS CO.
EVA C. AGERTER v. T. J. VANDERGRIFT.
JOHN MERTZ, JR., v. T. J. VANDERGRIFT.

APPEALS BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
OF WASHINGTON COUNTY, AND THE COURT OF COMMON
PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued October 21, 30, 1890—Decided January 5, 1891.
[To be reported.]

(a) An oil- and gas-lease contained a stipulation that the lessee should complete a well within a certain time, or thereafter pay to the lessor certain sums, semi-annually, until such completion; and provided that the lessee's failure to complete said well, or to make such payments, as stipulated, should render the lease null and void and of no effect between the parties:

1. The forfeiture clause being inserted in the interest of the lessor, he had the option, upon a default by the lessee, either to declare the forfeiture or to affirm the continuance of the contract; and when he adopted the latter alternative, the lessee could not set up a forfeiture as a defence to an action in affirmance of the lease: Galey v. Kellerman, 123 Pa. 492; Wills v. Natural Gas Co., 130 Pa. 222.

2. When the lessor, being entitled so to do by the terms of such a lease, remains in possession of the land subject to the rights of the lessee, and the lessee has never taken any possession, a formal re-entry by the lessor, for condition broken, is not requisite to effect a forfeiture; his occupancy, however, at and after the breach, will not operate as an assertion of a forfeiture, against his will.

3. The doctrine declared in Wills v. Natural Gas Co., 130 Pa. 222, as applied to a lease made prior to the decision of that case, is not a change in the law impairing the obligation of such contract, within the meaning of article I., § 10 of the constitution of the United States, even though such lease was taken by the lessee in reliance upon the doctrine of Kenrick v. Smick, 7 W. & S. 41, now rejected.

4. To bring a case within said provision of the federal constitution, it must be the constitution, or a statute, or some enactment that has the force of law, either of the state or of some municipality exercising legislative power delegated by the state, which impairs the obligation of a contract: Williams v. Bruffy, 96 U. S. 178–183.

5. A gas-lease reserved an annual rent of $500 on each well utilized; stipulated for the payment of $250 to the lessor semi-annually until completion of a well, and, after specifying when the $500 rent should be paid, provided in the same sentence that "a failure to complete one well or

Statement of Facts.

to make any of such payments . . . . . as above mentioned," should avoid the lease. The forfeiture clause would seem not to apply to the half-yearly payments for delay.

6. The fact that an oil- and gas-lease, made by a married woman in 1886, with all the terms of which on her part she had fully complied, was not acknowledged in such manner as to be binding upon her, affords no defence to an action to recover rentals from the lessee, brought by her after the lease had expired by its own limitation.

Before PAXSON, C. J., STERRETT,* GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 108, 109, 133 and 134 October Term 1890, Sup. Ct.; courts below, Nos. 162, 163, May Term 1890, C. P., Washington County; Nos. 187, 188 June Term 1890, C. P. No. 1, Allegheny County.

On March 14, 1890, James A. Smiley and James Ray brought actions of assumpsit against the Western Pennsylvania Natural Gas Company, to Nos. 162, 163 May Term 1890, in the Court of Common Pleas of Washington county, for the recovery of certain sums alleged to be due from the defendant to the plaintiffs respectively, in accordance with the provisions of certain oil- and gas-leases granted by the respective plaintiffs to the defendant.

In the action brought by Smiley, the lease sued on was dated August 4, 1888, and demised to the defendant, for the sole and only purpose of drilling and operating for petroleum oil and gas, and for the term of two years or so long thereafter as oil or gas should be found in paying quantities, a certain tract of land in Cross Creek township, Washington county, in consideration of certain royalties and rents reserved, and certain stipulations specified therein. The action was based upon the following provisions of said lease:

* Mr. Justice Sterrett was absent on October 30, 1890, when the cases of Agerter, and Mertz, v. Vandergrift were argued; but, as the main questions in all the cases embraced in this report are the same, and the arguments upon those questions in the briefs of appellants' counsel were identical in their language in all the cases, and as the cases were considered and decided by the Supreme Court together, no separation of them is made in the report, except so far as to show the particulars in which they differed from each other in their facts.

### Statement of Facts.

" The said second party hereby agrees, in consideration of the said lease of the above described premises, to give said party one eighth of all the oil or mineral produced and saved from said premises, and further agrees to give $500 per annum for the gas from each and every well drilled on the above described premises, in case the gas is conducted and used off the above described premises." . . . . .

"Said second party agrees to pay to said first party $250, within ten days from the execution of this lease; said second party further agrees to pay a further sum of $250, within six months from the execution of this lease, which said first and second sum of $250, is to be a credit on first gas well if completed in one year from the execution of said lease; and if said well is not completed within said period, then second party agrees to pay a further sum of $250, which is to be a credit upon the rental of said well if completed within the period of one year from that date, and so on continually every six months during the continuance of the term herein specified."

" The said sum of $500 gas rent shall be paid within one month from the time said gas is conducted and used off the premises above described, all moneys to be paid in advance at First National Bank, Washington, Pa.; and a failure to complete one well, or to make any of such payments within such time and such place as above mentioned, renders this lease null and void and to remain without effect between the two parties."

The plaintiffs' statement of claim averred that the defendant never completed a well upon the demised premises, and therefore became liable to pay to the plaintiff the following sums, to wit: $250 on February 4, 1889; $250 on August 4, 1889, and $250 on February 4, 1890; and that the action was brought to recover said sums, with interest. A copy of the lease was appended to the statement of claim.

The action of James Ray was brought upon a similar lease, dated July 7, 1888, the material parts of which appear in the opinion of the Supreme Court. The statement of claim filed was similar in its form and averments to that of Smiley. It set forth that the claim sued for consisted of $53 due January 7, 1889; $53 due July 7, 1889; $250 due October 7, 1889, and $53 due July 7, 1890, with interest on each of said sums from said respective dates.

Statement of Facts.

The defendant filed affidavits of defence in these two cases, identical in form, making the following averments:

"1. That under the lease nothing more than the oil and gas right in the land demised were granted to the defendant; that the whole of the remaining estate in said land remained in the plaintiff; that the defendant never, from the time of the execution of the said lease to the present, entered into possession of the premises or any part thereof; that the plaintiff at the time of the execution of said lease was in possession of the whole of said premises, and has so remained in possession ever since, and was so in possession at the times the several sums of money sued for in this case fell due under the said lease; that the lease by its terms, upon failure to make any one of these payments, became ipso facto null and void, and that there was no further liability upon the defendant to pay or perform.

"2. That the contract was made in the state of Pennsylvania; that the laws of the state of Pennsylvania in force when it was made, entered into and became a part of the contract between the parties; that it was then a part of the law of Pennsylvania that the non-payment of any instalment of money, or the non-performance of any covenant by the party of the second part, in an agreement of the kind sued on, containing a condition and forfeiture clause, such as in the agreement sued on, ipso facto ended and determined the contract, both as to the lessor and lessee, so that no action whatever could be brought on the said contract by the lessor against the lessee; that, relying upon that being a part of the law of Pennsylvania, which entered into and became a part of the contract sued on, the defendant entered into and made this contract with the plaintiff, and that it would not have done so had the rule of law been otherwise; that to now change or reverse that law, and hold that the non-payment would not determine the contract except at the option of the lessor, would be an impairing of the obligation of the contract as against the defendant, and would be in contravention of § 10, article I., of the federal constitution, which provides that no state shall pass any law impairing the obligations of a contract.

Rules for judgment for want of a sufficient affidavit of defence were taken by the respective plaintiffs, which, after argument, the court, McILVAINE, P. J., made absolute, in an

opinion holding that the cases were ruled by Wills v. Natural Gas Co., 130 Pa. 222. Judgments having been entered, the defendant took the appeals to Nos. 108 and 109, specifying in each case that the court erred:

1. In making absolute the rule for judgment.

2. In not discharging said rule.

To Nos. 187 and 188, respectively, of June Term 1890, in the Court of Common Pleas No. 1 of Allegheny county, Eva C. Agerter and John Mertz, Jr., brought actions of assumpsit against T. J. Vandergrift. In each of said actions the plaintiffs' statement of claim set out an oil- and gas-lease of land in Allegheny county, granted by the plaintiff to the defendant, on November 20, 1886, for the term of two years and as much longer as oil or gas should be produced or found in paying quantities, and containing the following stipulations:

"It is agreed that the party of the second part shall pay to the party of the first part one dollar a day from the date of this lease until a well is completed on the above described premises, said amount to be paid in monthly payments, made direct to first party or deposited to his credit in the Diamond National Bank, Pittsburgh, Pa.; and a failure to make said payments or to complete a well on said premises renders this lease null and void and of no effect between the parties hereto."

Each of said statements of claim averred that the lease therein mentioned continued in full force, without cancellation, surrender or abrogation, during the full period of two years from its date, and thereby the defendant during all that period had the exclusive right of drilling and operating for petroleum and gas upon the demised premises, but that he did not complete a well during said two years; wherefore, the plaintiff became entitled, according to the terms of the lease, to have and demand from the defendant the sum of one dollar per day, for and during the period of two years from the date of the lease, amounting to $730. Copies of the respective leases were appended to the statements of claim.

The defendant in these actions filed affidavits of defence setting up the same matters that are set forth in the affidavits filed by the Western Pennsylvania Natural Gas Company, in the actions brought against it, and substantially in the same

Arguments.

language.   An additional defence was set up by the affidavit filed in the action brought by Eva C. Agerter, in substance as follows:

" That the relation of landlord and tenant, and no other contractual relation, ever existed between the plaintiff and defendant; that, at the time of the signing of the instrument of writing sued on, the plaintiff was the owner of the land and premises purported to be granted and let by said writing, and has ever since been the owner of the same; that, at said time, she was and still is a married woman; that she never acknowledged said writing separate and apart from her husband, and never acknowledged it in any manner before any officer authorized to take acknowledgment of deeds, etc., as required by the laws of this commonwealth; and therefore said writing was a nullity and not binding on either party."

Rules for judgment for want of a sufficient affidavit of defence having been made absolute, and judgments having been entered in favor of the plaintiffs, Agerter and Mertz, respectively, the defendant Vandergrift took the appeals Nos. 133 and 134, specifying in each case that the court erred:

1. In making absolute the rule for judgment.
2. In not discharging said rule.

*Mr. D. T. Watson*, with him *Mr. David Sterrett* and *Mr. H. A. Miller*, for the Western Penna. N. Gas Co.; and *Mr. H. A. Miller*, for T. J. Vandergrift:

1. The estates granted by these leases were upon condition, and the lessors were in possession of the demised premises at the time of the breach of the condition. The estates, therefore, re-vested in them, by operation of law, without any act on their part; that is, the forfeiture was complete and the grants ipso facto void: Hamilton v. Elliott, 5 S. & R. 375; Dickey v. McCullough, 2 W. & S. 99; Feather v. Strohecker, 3 P. & W. 508; Bear v. Whisler, 7 W. 149; Kenrick v. Smick, 7 W. & S. 41; Moss's App., 35 Pa. 162; Sheaffer v. Sheaffer, 37 Pa. 525; Davis v. Moss, 38 Pa. 346; Clark v. Trindle, 52 Pa. 492; Brown v. Bennett, 75 Pa. 420; Clark v. Thompson, 12 Pa. 274; Brown v. Vandergrift, 80 Pa. 142; Munroe v. Armstrong, 96 Pa. 307; Innis v. Templeton, 95 Pa. 262; Dumpor's Case, 1 Sm. L. C. 136; Co. Litt., 218 a; Andrews v.

Senter, 32 Me. 394; Taylor v. Railroad Co., 25 Iowa 371; Thompson v. Thompson, 9 Ind. 329 (68 Am. Dec. 638); Richter v. Richter, 111 Pa. 456; Kennebec Bank v. Drummond, 5 Mass. 321; Alleghany Oil Co. v. Oil Co., 21 Hun 21.

2. It seems plain that an actual entry is not necessary to complete a forfeiture. Re-entry is the most effective remedy to enforce a forfeiture, and is the most emphatic declaration a grantor can make of his intention to avoid an estate upon condition. But possession, being the equivalent of entry, must have the same effect. It is true that in all the Pennsylvania cases we have cited, the grantor or lessor was insisting on the forfeiture. But how can that affect the principle of law? It is only in cases where the lessee is resisting the claim of forfeiture that the question of waiver can arise, and it is then held that there has been a waiver, only when both parties have treated the contract as a valid and subsisting contract between them. The present case is not ruled by Wills v. Natural Gas Co., 130 Pa. 222; for, in that case, the question of the possession of the landlord was not raised. The record discloses no such question, and we take it that this court decided the case upon the record. Nor was the grantor or lessor in possession of the land in any of the cases, English or American, cited in the opinion of the court in Wills v. Natural Gas Co., or in any other case holding a like doctrine.

3. From 1819, when Hamilton v. Elliott, 5 S. & R. 375, was decided, down to 1889, when the decision in Wills v. Natural Gas Co. was announced, the uniform, undoubted and oft-repeated rule in Pennsylvania, was that non-performance of such a condition, when the lessor was in possession, ipso facto determined the lease and the relation of landlord and tenant, as a conclusion of law. This being so, when these contracts were made the parties dealt with a knowledge of the law, and, as the affidavits of defence aver, the leases would not have been executed by the lessees, in the form in which they were written, had this not been understood to be the law. For this court now to declare that this settled rule of property in Penn-. sylvania is changed, and that the changed rule will be applied to pre-existing contracts, is to hold the lessees to a bargain that they never made, and work a result in violation of the clause in the constitution of the United States forbidding a

state to pass any law impairing the obligation of a contract: Ohio Trust Co. v. Debolt, 16 How. 432; Fisk v. Police Jury, 116 U. S. 133.

4. The legislature cannot change the law as it existed when the contract was made, for that would be to make a new contract for the parties: O'Conner v. Warner, 4 W. & S. 227; Dale v. Medcalf, 9 Pa. 109; Lambertson v. Hogan, 2 Pa. 23; Gordon v. Inghram, 1 Gr. 152. Why then should the judiciary change the law, and impose an obligation which did not exist when the contract was entered into? The nature of the transaction, and of the business proposed to be conducted on the demised premises, should be considered. This is not like an ordinary letting. The lessors have had the full and complete use and enjoyment of the land; and, if subsequent developments show that neither oil nor gas exists in paying quantities in the premises, the lessors have lost and given nothing by the leases, and the lessees have received nothing. Why should they be compelled to pay rental on leases for which there is no consideration? As to the Agerter lease, under the settled law of this state, it is clear that the lease was a nullity, and that the lessee acquired no title whatever thereunder: Innis v. Templeton, 95 Pa. 262. Nor did the defendant ever enjoy the possession of the land. No case has gone to the length of holding a defendant in these circumstances. The lease has expired by its own limitation, and no ratification now can vest any estate or right in the defendant.

*Mr. John L. Gow* (with him *Mr. Thomas McK. Hughes*), for the appellees, Ray and Smiley:

1. The clause of forfeiture was made in the interest of the lessor, not that of the lessee, and is to be enforced for the benefit of the lessor alone: Brown v. Vandergrift, 80 Pa. 142; Galey v. Kellerman, 123 Pa. 491. The lessor may or may not claim the forfeiture; he may waive it and affirm the continuance of the contract, and having done so by demanding payment of the stipulated price of the lessee's delay, he has a clear right of recovery: Wills v. Natural Gas Co., 130 Pa. 235. It is claimed that the present cases are differentiated from that just cited, because the question of the landlord's possession was not raised in it. On the contrary, the affidavit

of defence in that case averred that the defendant, before the date when the rent there sued for accrued, had forfeited, abandoned and surrendered the lease, and had not been in possession since long prior thereto.

2. The principle that, on breach of a condition annexed to a grant, when the grantor is in possession, the estate re-vests in him, without any act on his part, would apply, if the contingency upon which the forfeiture is to take place were a definite event, not depending upon the performance or non-performance of any covenant of the grantee or lessee. But, when the grantee or lessee, by breaking his covenant, endeavors to put an end to his contract and thus take advantage of his own wrong, a different rule exists, and he is estopped from setting up his own failure to keep his covenant against the lessor. We have in this state, by slow approaches, turned into the general current of decisions in which is found without doubt the great weight of authority both in England and in this country: Wills v. Natural Gas Co., supra.

. 3. The oil and gas rights were exclusively in the lessee from the instant when the lease was executed, until the instant of the breach, and the lessor therefore was not in possession of any right to drill for oil or gas at the time of the breach. Consequently, under the facts shown by the affidavit of defence, there is no room to raise the question of a re-entry and ouster, either in fact or by operation of law, and the cases cited by the appellant are misfits. Again, a right of re-entry exists only for the benefit of the lessor and at his election, and he may waive it. As related to the facts of these cases, it is not correct to allege that the law of Pennsylvania, at the time when the leases were made, was that non-performance of the condition ipso facto determined the lease and the relation of landlord and tenant.

*Mr. John S. Lambie* (with him *Mr. A. M. Brown*), for the appellees Agerter and Mertz:

1. Mrs. Agerter has not done anything to avoid her lease, like the married women in the cases of Innis v. Templeton, 95 Pa. 262; Buchanan v. Hazzard, 95 Pa. 240, and Harbert v. Miller, 4 W. N. 325; but she has fully complied with her part of the contract. Her coverture would be a defence, if inter-

posed in her behalf, but it affords no defence to the lessee: Hawkins v. Oswald, 2 Woodw. 295; Mansley v. Smith, 6 Phila. 223; Jarnigan v. Levisay, 6 Tenn. 397; Freeman v. Walsh, 7 W. N. 296; Riley v. Cullen, 7 W. N. 114; Kahn v. Pickard, 5 W. N. 537; Welsh v. Oates, 9 Phila. 154.

2. Strange as it may seem, we have in these cases a defendant, confessedly in default, endeavoring to escape from his contract by setting up that default as a defence. The ingenious argument based upon the lessor's possession overlooks two important legal propositions. The first of these is that there may be a separate estate in minerals, distinct from the land containing them: Adams v. Iron Co., 7 Cush. 361; Caldwell v. Fulton, 31 Pa. 475; Armstrong v. Caldwell, 53 Pa. 284; Sanderson v. Scranton City, 105 Pa. 469; Scranton v. Phillips, 94 Pa. 15; Delaware R. Co. v. Sanderson, 109 Pa. 583; Hope's App., 33 P. L. J. 270. And there is no reason why the law applicable to a mining lease should not apply to an oil- and gas-lease: Stoughton's App., 88 Pa. 198; Funk v. Haldeman, 53 Pa. 229; Gill v. Weston, 110 Pa. 312; Kitchen v. Smith, 101 Pa. 452.

3. The second proposition, overlooked by the defendant's argument, is that the possession of the surface does not necessarily carry with it the possession of the minerals below: Caldwell v. Copeland, 37 Pa. 427; Armstrong v. Caldwell, 53 Pa. 284. And the entire position of the appellant is illogical. If the lease became ipso facto void upon breach of its conditions, the question of possession is wholly immaterial: Wills v. Natural Gas Co., 130 Pa. 222; Westmoreland N. Gas Co. v. DeWitt, 130 Pa. 235; Galey v. Kellerman, 123 Pa. 491. It rests with the lessor to waive or enforce the forfeiture: Westmoreland N. Gas Co. v. DeWitt, supra; Galey v. Kellerman, supra; Wills v. Natural Gas Co., supra; Shettler v. Hartman, 1 Penny. 279; Taylor, L. & T., § 492; Doe v. Bancks, 4 B. & A. 401; Reid v. Parsons, 2 Chitty 247. The defendant having wholly misapplied the law, his argument that the "judiciary" should not "change the contract," etc., is without force.

RAY v. GAS CO.

OPINION, MR. JUSTICE CLARK:

This appeal is taken from the judgment of the Common Pleas, entered for want of a sufficient affidavit of defence.

Opinions of the Court.

The action is assumpsit to recover certain sums, stipulated in a gas- or oil-lease, for delay or default in operating the lease. The lease is dated July 7, 1888; James Ray, the party of the first part, being the lessor, and the Western Pennsylvania Natural Gas Company, the party of the second part, the lessee. The lease provides that, in consideration of certain rents and royalties, the said Ray hath granted, demised, and let unto the said company, "for the sole and only purpose of drilling and operating for petroleum oil and gas, for the term of two years or so long thereafter as oil or gas is found in paying quantities, a certain tract of land in Cross Creek township," etc.; the party of the second part agreeing, in consideration, "to give said first party one eighth of all the oil from wells producing less than fifty barrels per day, and one fourth of the oil from all wells producing more than fifty barrels per day;". and, further, "to give $500 per annum for the gas from each and every well drilled," etc., in case the gas is conducted and used off the premises. The particular clause of the contract, upon which suit is brought, is as follows:

"The party of the second part agrees to pay, within ten days from the execution of this lease, the sum of fifty-three dollars; and, if a well is not completed within six months from the execution of this lease, the said second party agrees to pay a further sum of fifty-three dollars, and so on continually every six months, during the continuance of the term herein specified. The said sum of $500 gas rent shall be paid within one month from the time said well is completed on said premises, and to be paid annually, in advance, thereafter. It is further agreed by said second party, that if a well is not completed within fifteen months from the date of this lease, they are to pay a further sum of $250, said sum to be a credit on well when drilled; and, in case of failure to complete one well within such time, the party of the second part hereby agrees to pay thereafter to party of the first part, for any future delay, the sum of $106 per annum, within one month after the time for completing such well, as above specified, payable semi-annually at the First National Bank of Washington, Pa.; and the party of the first part hereby agrees to accept such sum as full consideration and payment for such yearly delay, until one well shall be completed. And a failure to complete one well, or

to make any such payment within such time and such place, as above mentioned, shall render this lease null and void, and to remain without effect between the two parties."

The plaintiff's statement averred that the defendant had never completed a well on the demised premises, and claimed to receive $53, due January 7, 1889; $53, due July 7, 1889; $250, due October 7, 1889; and $53, due January 7, 1890. The affidavit of defence set forth, in substance, that, by the terms of the lease, the only right granted was the right to operate for gas or oil; that the defendant never entered into the possession for this purpose, while the plaintiff, not only at the time of the lease, but when the several sums sued for became due, respectively, was and still is in possession of the land described in the lease, and that, under these circumstances, and according to the law as declared in the decisions of this court, the lease, by its terms, on the defendant's failure to put down one well, or to make any one of the payments specified, became ipso facto null and void, without re-entry, and that, therefore, there is now no liability upon the part of the defendant either to pay or to perform.

The case is in all respects governed by our decision in Wills v. Natural Gas Co., 130 Pa. 222. It is true, the lessor's possession was not alluded to in the discussion and decision of that case, nor do we regard the question whether or not he was in possession, subject to the lease, as a matter of any great significance. We agree with the appellant in its contention that if, in such a case as this, the lessor should choose to avail himself of the forfeiture clause in his contract, a formal re-entry, to take advantage of the breach, was not required; the authorities cited by the appellant are decisive of the question. In Hamilton v. Elliott, 5 S. & R. 375, there was a conveyance of a freehold by A to B, upon certain conditions which were not complied with, the grantor, in accordance with the terms of the grant, remaining in the possession from the time of the conveyance until after the forfeiture accrued; and it was held in a suit by the assignee of A that, by reason of the breach of the condition whilst A was in the actual possession, the estate re-vested in A without a formal entry to take advantage of the breach, or notice of the non-performance of the condition. As the grantor was already in the possession, it was deemed unnecessary that

he should go out in order that he might re-enter, or, that the grantee should have formal notice of what he already knew, viz., that the condition was not performed.    To the same effect are the other cases cited by the appellant: Dickey v. McCullough, 2 W. & S. 99; Feather v. Strohoecker, 3 P. & W. 508; and Bear v. Whisler, 7 W. 149.    The same rule has been applied to leases for years: Kenrick v. Smick, 7 W. & S. 41; Sheaffer v. Sheaffer, 37 Pa. 525; Davis v. Moss, 38 Pa. 346; Brown v. Bennett, 75 Pa. 420; Brown v. Vandergrift, 80 Pa. 142; and Munroe v. Armstrong, 96 Pa. 307.    But, as by the terms of the lease, Ray, the plaintiff, was entitled to remain in possession of the land, subject to the right of the company to drill and operate for oil and gas, his occupancy of the land at and after the time of the breach can be of little consequence, unless by some act in assertion of the forfeiture he gave it a greater effect.    It was certainly not necessary that he should abandon the possession to which, by the very terms of his contract, he was entitled, in order that he might insist upon performance by the lessee; the lessor's election to forfeit, whilst he is in the actual possession, may be regarded as a constructive entry, under his title.

But it is said that the doctrine declared in Wills v. Natural Gas Co., supra, is an innovation or change in the law; that the parties must be presumed to have contracted in view of the general law, as it was expounded when their engagements were formed, and to determine the legal effect of the contract otherwise, is to impair its obligation, in contravention of the tenth section of the first article of the federal constitution.    In Kenrick v. Smick, supra, and in Sheaffer v. Sheaffer, supra, although the condition, in each case, was inserted in the interest of the lessor, it was held that, upon breach of the condition by the lessee, the lease was ipso facto absolutely void without re-entry, and could not afterwards be affirmed or continued by any subsequent recognition of the tenancy on part of the lessor, or by any act of his other than the making of a new lease.    But, as we said in Wills v. Natural Gas Co., supra, the rigor of the rule was relaxed in Davis v. Moss, 38 Pa. 346, where the forfeiture was said to depend upon the terms of the instrument, " unless there be evidence to affect the landlord with a waiver of the breach, like the receipt of rent, or other equally une-

quivocal act," in which case the lease may be continued at the instance of the lessee. The ruling in Davis v. Moss, supra, was the first step in the transition from the doctrine of Kenrick v. Smick, supra, to the now well-settled rule laid down in Galey v. Kellerman, 123 Pa. 491, and Wills v. Natural Gas Co., supra, where the principle is established that, where the condition appears to have been inserted solely in the interest of the lessor, the lease is void upon the breach, if the lessor, by some positive act, elects to take advantage of it. The departure from Davis v. Moss, supra, is greater, perhaps, than the reasoning in the case last cited would seem to indicate, but it was taken on due deliberation and careful study of the principles involved, and we are not inclined to recede from the position assumed. It is a somewhat significant fact, that in all the cases cited, including Davis v. Moss, supra, the forfeiture was set up by the lessor, in whose interest the condition was inserted, upon the default of the lessee; in none of them, as in the case at bar, did the lessee set up his own default as a cause of forfeiture. No case has been brought to our notice in which the lessee was allowed to take advantage of his own wrong, or to set up his own default, to work a forfeiture of his own contract; it must be conceded, however, that if the old rule is the right one, this anomalous result must ensue. Persons may perhaps contract expressly in this form, and to this effect; when they do, the transaction amounts to a mere option, and the lessee, in setting up his own default, simply avails himself of an elective right secured to him in his contract. We do not understand the contract in suit to be of this character. The clear purpose of the lessor was to have his lands operated for oil or gas, and the condition was inserted for his benefit. Whilst the obligation on part of the lessee to operate is not expressed in so many words, it arises by necessary implication. The lease was for the expressed purpose of drilling and boring for oil or gas, the lessor, in a certain event, to receive a share of the production as a royalty or rent, and, in another event, to be paid $500 per annum for each gas-well, the product of which was conducted from the land for consumption. If a farm is leased for farming purposes, the lessee to deliver to the lessor a share of the crops, in the nature of rent, it would be absurd to say, because there was no express engagement to farm, that

the lessee was under no obligation to cultivate the land; an engagement to farm in a proper manner, and to a reasonable extent, is necessarily implied. The clear purpose of the parties to this lease was to have the lands developed, and the half-yearly payments, and the other sums stipulated, were intended not only to spur the operator, but to compensate Ray for the operator's delay or default. The lessor's hands have been tied for two years. We do not know that he lost anything in royalties, or that he suffered by drainage, for the territory might have proved unproductive; but, as the transaction was founded in the hope that either oil or gas, or both, might be found in paying quantities, it was competent for the parties to contract in advance for the amount of compensation to which, in the event of delay or default in development, the lessor would be entitled. The provision for forfeiture was doubtless inserted in anticipation that the lessee might make default and become unable to pay, in which event he might put an end to the lessee's pretensions and seek other means of development. This clause having been inserted as a protection to the lessor, he had the right either to declare the forfeiture or to affirm the continuance of the contract; and, if the lessor did not choose to avail himself of the forfeiture, the lessee cannot set it up as a defence to an action in affirmance of the contract: Galey v. Kellerman, supra; Wills v. Natural Gas Co., supra.

The courts of highest authority of all the states, and of the United States, are not infrequently constrained to change their rulings upon questions of the highest importance. In so doing, the doctrine is, not that the law is changed, but that the court was mistaken in its former decision, and that the law is, and really always was, as it is expounded in the later decision upon the subject. The members of the judiciary in no proper sense can be said to make or change the law; they simply expound and apply it to individual cases. To this general doctrine there is a well-established exception, as follows: "After a statute has been settled by judicial construction, the construction becomes, so far as contract rights are concerned, as much a part of the statute as the text itself, and a change of decision is, to all intents and purposes, the same in effect on contracts as an amendment of the law by means of a legislative enactment:" Douglass v. Pike Co., 101 U. S. 677. See, also, An-

derson v. Santa Anna, 116 U. S. 361, and cases there cited:
Cooley, Const. Lim., 474–477.   To this effect, and no more, we
understand to be the cases of Ohio Trust Co. v. Debolt, 16
How. 432; Gelpcke v. Dubuque, 1 Wall. 175; Havemeyer v.
Iowa Co., 3 Wall. 294; Olcott v. Supervisor, 16 Wall. 678.
In Ohio Trust Co. v. Debolt, supra, the doctrine is thus stated:
" The sound and true rule is that if a contract, when made, was
valid by the laws of the state, as then expounded by all the
departments of the government and administered in its courts
of justice, its validity and obligation cannot be impaired by any
subsequent act of the legislature, or the decision of its courts
altering the construction of the law."   The ruling applies, it
will be observed, not to the general law, common to all the
states, but to the laws of the state " as expounded by all the
departments of its government;" and it is held that contracts
valid by these laws may not be impaired, " either by subsequent
legislation, or by the decisions of its courts altering their con-
struction."   The reference is, of course, to the statute law.

In New Orleans Water-Works Co. v. Louisiana Co., 125 U.
S. 18, the law on this subject is stated as follows : " In order to
come within the provision of the constitution of the United
States, which declares that no state shall pass any law impair-
ing the obligation of contracts, not only must the obligation of
a contract have been impaired, but it must have been impaired
by a law of the state.   The prohibition is aimed at the legisla-
tive power of the state, and not at the decisions of its courts,
or the acts of administrative or executive boards, or officers, or
the doings of corporations or individuals.   This court, there-
fore, has no jurisdiction to review a judgment of the highest
court of a state, on the ground that the obligation of a contract
has been impaired, unless some legislative act of the state has
been upheld by the judgment sought to be reviewed."   " We
are not authorized by the judiciary act," says Mr. Justice MIL-
LER, in Knox v. Bank, 12 Wall. 383, " to review the judgments
of the state courts because their judgments refuse to give effect
to valid contracts, or, because those judgments, in their effect,
impair the obligation of contracts.   If we did, every case de-
cided in a state court could be brought here, when the party
setting up a contract alleged that the court had taken a differ-
ent view of its obligation to that which he held."   To bring

the case within this provision of the federal constitution, it must be the constitution, or a statute, or some enactment that has the force of law, either of the state or of some municipality exercising legislative power delegated by the state, which impairs the obligations of a contract: Williams v. Bruffy, 96 U. S. 176–183; United States v. New Orleans, 98 U. S. 381–392; Murray v. Charleston, 96 U. S. 432–440; Meriwether v. Garrett, 102 U. S. 472. In the very recent case of Lehigh Water Co. v. Easton, 121 U. S. 388, Mr. Justice HARLAN says: "The state court may erroneously determine questions arising under a contract which constitutes the basis of the suit before it; it may hold the contract void, which in our opinion is valid; it may adjudge the contract to be valid, which in our opinion is void; or its interpretation of the contract may in our opinion be radically wrong; but in neither of such cases would the judgment be reviewable by this court, under the clause of the constitution protecting the obligation of contracts against impairment by state legislation, and, under the existing statutes defining and regulating its jurisdiction, unless that judgment, in terms, or by its necessary operation, gives effect to some provision of the state constitution, or some legislative enactment of the state, which is claimed by the unsuccessful party to impair the obligation of the particular contract in question."

The affidavit, in our opinion, is insufficient, and the judgment was rightly entered.

Judgment affirmed.

### SMILEY v. GAS CO.

OPINION, MR. JUSTICE CLARK:

The clause of forfeiture in this case would seem to apply, not to the half-yearly sums of $250, but to the annual payments of $500 to be made for gas rent of the well, or each of the wells, the product of which should be conducted off the farm for consumption within the period covered by the lease, which was "for two years, or so long thereafter as oil or gas is found in paying quantities," or to a failure to put down any well within two years. There was no time within two years in which the lessees were bound to put down a well under penalty of forfeiture; but, for certain periods of delay within that time, they were to pay certain sums of money, which, in a

certain event, were to be credited upon the rent, when a well or wells were put down producing oil or gas in paying quantities.   The last payment of $250 was due on February 4, 1890, and the suit was brought March 14, 1890, whilst the two years did not expire until August 4th thereafter.   The time for forfeiture, therefore, had not yet arrived.   But, if this were not so, the case is governed by our opinion filed in Ray v. Natural Gas Co., ante, 576, filed at present term.

The judgment is affirmed.

### AGERTER v. VANDERGRIFT.

OPINION, MR. JUSTICE CLARK:

The principal question, in this case, arising out of the clause of forfeiture contained in the lease, is decided in Ray v. Natural Gas Co., ante, 576.   We there held, following our own cases of Galey v. Kellerman, 123 Pa. 492, and Wills v. Natural Gas Co., 130 Pa. 222, that, as this clause was inserted in the interest of the lessor, he had the option either to declare the forfeiture or to affirm the continuance of the contract, and, if the lessor does not choose to avail himself of the forfeiture, it cannot be set up by the lessee as a defence to an action in affirmance of the lease.

The case differs from Ray v. Natural Gas Co., supra, in this, however, that Eva C. Agerter, the lessee at the time of the making and execution of the lease, was and still is a femecovert, being the lawful wife of Christopher D. Agerter, who joined her in the execution thereof; and it is contended that, as the said lease was not acknowledged as required by law, it is null and void, and that the plaintiff, upon that ground if not upon any other, was not entitled to judgment for want of a sufficient affidavit of defence.

As the validity of the lease in question is not affected by any statute in force at the time the lease was made, the question is to be determined according to the principles of the common law.   The contracts of a married woman, at the common law, were absolutely void, but they have been held valid when set up by her in her own behalf, and when she is not in default in performance on her part.

It has been held that she may take a lease; and, if she, in fact, voluntarily performs all the stipulations on her part to be

performed, the lessor will not be permitted to treat the lease as void, for this would be against equity and good conscience: Baxter v. Smith, 6 Binn. 427. She may take a conveyance in fee of lands to herself, and the fact that it is encumbered with a condition will not prevent its vesting: Bortz v. Bortz, 48 Pa. 382. She may hold lands purchased under an executory agreement upon which she has paid the instalments of purchase money as they fell due, averring her readiness and willingness to pay the balance as it shall become due. Such a contract can be rescinded only on her refusal to perform the conditions: Vance v. Nogle, 70 Pa. 176. In Walker v. Coover, 65 Pa. 430, it was held that an assignment of bonds to a married woman, as collateral security, upon her undertaking to pay certain debts of the assignor, was good notwithstanding her coverture, she having paid part of the debts and averred her readiness to pay the remainder.

It is not pretended that the plaintiff has not in all respects complied with her contract. She has not sought to avoid the instrument, nor has she interfered with the defendant, or in any way or manner prevented him from operating under the lease. On the contrary, she has respected his rights, has refrained from operating herself, or through others, and, still standing upon her contract, she demands that the defendant shall comply with his covenants. An affidavit of defence setting up coverture, under such circumstances, is insufficient: Kahn v. Pickard, 5 W. N. 537.

The judgment is affirmed.

MERTZ v. VANDERGRIFT.

OPINION, MR. JUSTICE CLARK:

This case is in all respects governed by the principles set forth in our opinion in Ray v. Natural Gas Co., ante, 576.

Judgment affirmed.