## Higbee et al. *v.* Marietta et al., Appellants.

*Mines and mining—Lease—Royalties—Default — Forfeiture — Party pleading his own wrong — Retaking possession — Evidence —Burden of proof.*

1. Where a coal lease provides that the lessees' rights shall automatically cease if they default in the payment of royalties for a given time, their right to continue mining will be suspended, after any such default, until they pay up all arrearages.

2. This provision does not, however, deprive the lessor of the right to recover the minimum royalties accruing during such period, unless, under the authority given by the lease, he retakes possession of the property.

3. The right to retake possession in case of a default is for the benefit of the lessor, and he alone can take advantage of it, the lessees cannot avail themselves of their own wrong, or set up their own default to work a forfeiture of their contract.

4. The burden of proving that the lessor did retake possession of the property is on those who aver it.

Argued September 30, 1925.   Appeal, No. 124, March T., 1925, by defendants, from judgment of C. P. Fayette Co., Sept. T. 1923, No. 192, on verdict for plaintiffs, in case of E. C. Higbee et al., Executors of Walter W. Laughead, deceased, v. Harry Marietta et al. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit for coal royalties.   Before REPPERT, J.

The opinion of the Supreme Court states the facts.

Directed verdict for plaintiff for $14,049.87 on which judgment was entered.   Defendants appealed.

*Error assigned* was, inter alia, direction for plaintiffs, quoting bill of exceptions.

*H. S. Dumbauld,* with him *F. E. Younkin,* for appellants.—Whether plaintiffs' testator exercised his right to declare a forfeiture of the lease in suit and to exclude lessees from possession of the leased premises was, under all the testimony, a question of fact for the jury: Galey v. Kellerman, 123 Pa. 491; Wills v. Gas Co., 130 Pa. 222; Ray v. Gas Co., 138 Pa. 576; May v. Oil Co., 152 Pa. 518.

*S. J. Morrow,* of *Morrow & Whitehill,* with him *T. L. Morgan,* for appellees.—There is no evidence that lessor evicted lessees on or prior to January 15, 1919, as al-

leged in the affidavit of defense: Fotterall v. Armour, 218 Pa. 73.

There is no evidence that lessor evicted lessees in the last week of March, 1919.

The word "automatically" was inserted for the benefit of lessor: Wills v. Gas Co., 130 Pa. 222; Galey v. Kellerman, 123 Pa. 491; Ray v. Gas Co., 138 Pa. 576; McKean Nat. Gas Co. v. Wolcott, 254 Pa. 323.

OPINION BY MR. JUSTICE SIMPSON, November 23, 1925:

Defendants appeal from a judgment, entered on an instructed verdict in favor of plaintiffs, in a suit to recover the minimum royalties alleged to be due on a coal-mining lease. Its 11th paragraph provides that, "In case the lessees shall be in default in the payment of two installments of said monthly royalties,......and such default shall continue for thirty days after notice thereof to them,......then in any such event their rights hereunder shall automatically cease......and thereupon the lessor shall have the right to reenter and take possession of the said mine," either voluntarily, or by virtue of an amicable action and judgment in ejectment, provided for in the lease.

It will be observed that the only rights which were to "automatically cease" were those of the lessees. Because of this, they could mine no more coal until they had paid up all arrearages (McKean Natural Gas Co. v. Wolcott, 254 Pa. 323, 326), pending which the lessor was to *"have the right* to reënter and take possession of the said mine"; but neither by the terms of the lease, nor by any principle of law, was he required so to do; hence, if he did not, the tenancy and liability for royalties continued. The provision quoted was for his benefit, and he alone could avail himself of it (Wills v. Manufacturers Natural Gas Co., 130 Pa. 222), the lessees not being "allowed to take advantage of [their] own wrong, or to set up [their] own default to work a forfeiture of [their]

own contract": Ray v. West Penna. Natural Gas Co., 138 Pa. 576, 589.

Appellants do not challenge these principles, nor do they aver that the proofs showed an actual physical retaking of possession of the property; but they claim that their evidence, hereinafter referred to, would, if believed, be sufficient to justify a jury in inferring such a retaking. Whether or not it was, is the only question in the case; and the burden of proof of showing it, was on appellants—no mean burden, in view of the fact that testator, in his lifetime, and his executors, after his death, made repeated demands for payment, without, so far as appears, any denial by appellants that they were liable. In this light we must consider the alleged facts relied on by them.

Part of their testimony tended to prove that on or about January 15, 1919 (after they had ceased operating the mine because there was no market for the coal), testator's son, who had previously received payments for his father, refused to accept two months' minimum royalty, alleging the money offered "was not legal tender," and adding, "I am going to take the mine out of your hands. You are done with it now." As appellants concede the son had no authority in the premises, and that he did nothing in pursuance of the threat, we need consider the matter no further. It should be noted, however, that this futile statement is the only evidence of anything occurring prior to January 15, 1919, which could affect the rights of the parties in any way; yet the averment of the affidavit of defense is that defendants had "been ejected from the said premises" prior to that date.

There was evidence also that some time during the last week of March, 1919, one of defendants said to testator "We came out here for the purpose of talking to you about the mine. We want to get ready and clean the mine up and resume operations," to which testator replied, "You don't need to bother cleaning the mine up.

You have nothing to do with it. Your lease has expired. After you closed the mine down for a period of sixty days, the lease automatically cancelled itself." Defendant thereupon said "Well, if that is the way you feel about it, I will not take any more of your time." Defendant then left, after which the witness, who testified as above, endeavored to lease the mine from testator, but without success. At this interview, apparently defendant did not pay or tender the arrearages due by him and his co-lessees, and their mining rights having theretofore automatically ceased because of their default, this situation would, by operation of law, so continue until those arrearages were paid. There is no evidence that testator had actually retaken possession before that time, or that it was then said he had done so, and we cannot assume this to be the fact—since he could not legally have done it without having previously given a default notice to defendants, which was neither averred nor proved,—especially, as will hereinafter appear, the lessees still continued in actual possession of at least a part of the leased property.

About the same time, testator's son, who was working on his own property near the mine, finding that defendants' office door was open, and a desk and three account books therein were liable to be stolen, took possession of them and kept them safely to the time of trial. There was no proof that testator had any knowledge of this, and certainly it proved nothing as to possession of the leased mine, which defendants closed, but did not surrender to testator, when they ceased operating it.

Finally, appellants claim that shortly after the date last mentioned, one of defendants' employees, who was in charge of certain horses and mules, kept by defendants on the leased property, took them to testator's son and left them with him, because defendants would not supply feed for their use, and the employee was no longer willing to buy it himself. So far as appears, testator did not even know of their delivery to his son,

which was made elsewhere than at the mine.    This is the last picture we have of the property during the term of the lease, and it shows that defendants, by their agent, were themselves still in possession.

The judgment of the court below is affirmed.